# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00499-CV

**Appellant, Marc R. Wein // Cross-Appellant, William Sherman**

**v.**

**Appellees, William Sherman and Eduardo Alarcon // Cross-Appellee, Marc R. Wein**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-06-001292, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M  O P I N I O N

This appeal arises from disputes among neighbors. Marc R. Wein appeals the district court's judgment incorporating its prior order awarding sanctions against him in favor of appellee William Sherman and denying all other relief. Cross-Appellant Sherman appeals the district court's dismissal of his claims against Wein.[1] For the reasons that follow, we affirm the trial court's final judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties to this suit are neighbors who have a history of disputes, including prior litigation. In 2004, Sherman and the parties' neighborhood association obtained a money judgment

_____

[1] Eduardo Alarcon was a defendant and, after realignment of the parties, a plaintiff below and is named as an appellee here. However, none of the issues before us involves claims by or against Alarcon, and he has filed no briefs with this Court.

and a permanent injunction against Wein relating to his disputed activities and accessory structure. Wein's failure to comply with the temporary and permanent injunctions issued in that suit resulted in his being found in contempt of court three times, fined, and confined to county jail.[2] Following the entry of judgment, Sherman filed an abstract of judgment in the Travis County real property records. Upon Wein's filing a supersedeas bond and Sherman's receipt of notice from Wein's attorney, Sherman provided a partial release of the abstract of judgment, excluding Wein's homestead. This Court subsequently upheld the 2004 judgment.[3]

**Litigation Commenced**

Sherman contends that following the 2004 judgment he began to observe vandalism to his property and suspected Wein was responsible. As a result, Sherman installed video cameras at various locations on his property. In December 2005, one of the video cameras captured Wein trespassing at the edge of Sherman's property and damaging a sprinkler head. Sherman filed charges against Wein, who was arrested and charged with criminal mischief in April 2006. Eight days later Wein filed this suit against Sherman and Alarcon alleging invasion of privacy, wiretapping,[4] and trespass. Specifically, Wein alleged that Sherman and Alarcon had installed infrared cameras

---

[2] In an ancillary proceeding to Wein's appeal of the 2004 judgment, this Court, after ordering that a show cause hearing be held in the trial court, found Wein in contempt of court and fined him $2,000. *See Wein v. Jenkins*, No. 03-04-00568-CV (Tex. App.—Austin Feb. 15, 2005, order) *available at* http://www.3rdcoa.courts.state.tx.us/opinions/Opinion.asp?OpinionID=13506. The other contempt findings were made by the district court.

[3] *See Wein v. Jenkins*, No. 03-04-00568-CV, 2005 Tex. App. LEXIS 7477 (Tex. App.—Austin Sept. 9, 2005, no pet.) (mem. op.).

[4] *See* Tex. Civ. Prac. & Rem. Code §§ 123.002, .004.

2

directed at the interior of Wein's home and that Sherman had installed a listening device that would allow him to intercept Wein's telephone conversations. Wein further alleged that Sherman and Alarcon intentionally directed irrigation devices to spray water on Wein, his family, and his guests and painted a red stripe on the pavement in front of his home, which he contends was intended to mark his home as the residence of a person of the Jewish faith.

In May 2006, the district court held a hearing on Wein's request for injunctive relief. Sherman contends that at the hearing both Wein and his expert testified that they did not know "what the cameras are looking at."[5] The expert further testified that he did not know the make, model, or zoom capabilities of the cameras but they did not appear to have infrared illuminators or night vision. The district court denied the injunction.

Wein subsequently filed an amended petition adding a claim for slander of title against Sherman, alleging that because Sherman filed an abstract of the 2004 judgment, Wein had been unable to obtain a home equity loan. During discovery, Wein explained that he had needed the loan to replenish his retirement account, from which he had borrowed money to supercede the 2004 judgment, and had been forced to secure a loan at a less favorable rate. Wein further asserted that he had obtained a loan from his fiancé's mother, Mary Richards, and had paid her $25,000 in interest. Wein produced a check payable to Richards for $25,000 dated November 22, 2004. The reverse side of the check indicated that it had been presented for payment on May 2, 2007.

---

[5] The record does not contain a transcript of the injunction hearing.

3

**Disposition of Wein's Claims**

In September 2007, Sherman served Wein with a notice of intent to take the oral deposition of Richards. Two days later Wein nonsuited his slander of title claim and concurrently filed a motion to quash the deposition. The next day Wein's attorney filed a motion to withdraw. The record does not contain an order on Wein's motion to quash Richards' deposition, but on September 21, 2007, Richards was deposed. Richards testified that she loaned Wein money, he paid her back, and she did not charge or receive any interest from him. She further testified that she did not receive a check from Wein for $25,000 and did not recall signing or endorsing such a check. Richards also stated that the loan was arranged through her daughter, Melissa Steffen, and she never spoke to Wein about it.[6] On the same day Richards was deposed, Wein's attorney filed an amended motion to withdraw, to which Wein agreed and which the district court granted on September 27, 2007,[7] and Sherman and Alarcon filed no-evidence motions for partial summary judgment on Wein's claims for invasion of privacy and trespass, which the district court granted in October 2007.[8]

---

[6] In her deposition, taken around the same time, Steffen testified that Wein and Richards came up with the terms of the loan and Steffen was not involved.

[7] Wein's withdrawing counsel was his third attorney and second attorney of record in this lawsuit. Wein continued pro se for a brief period and was subsequently represented by three other attorneys. Although the record is unclear, there is reference to Wein's representation by a seventh attorney.

[8] In his first deposition in August 2007, Wein testified that his expert "couldn't find any wiretapping" when he checked the lines "probably" before Wein filed suit. Referring to his claim for wiretapping, he further testified, "I can withdraw that allegation." Although the record is unclear, Wein's claim for wiretapping was either withdrawn by Wein's deposition testimony, dismissed as a portion of the invasion of privacy claim, or subsequently abandoned by Wein through his attorney.

4

After the dismissal of Wein's claims, there remained pending counterclaims filed by Sherman and Alarcon for attorney's fees, trespass, nuisance, and violations of neighborhood restrictions. Alleging that the $25,000 check Wein produced in discovery was fabricated and that Wein, Richards, and Steffen conspired to defraud them, Sherman and Alarcon obtained leave to redepose Wein, Richards, Steffen on the sole issue of fabrication of evidence.

**Deposition Testimony on Fabrication of Evidence and Partial Settlement**

In her second deposition in April 2008, Richards recanted her prior testimony, stating that she did recall signing a $25,000 check from Wein and placing her thumbprint on it in 2007. She testified that in February or March 2007, Wein asked her if she would sign a check for $25,000 to help him and she agreed without further discussion. Richards also testified that on the day she signed the check, she and Steffen were running errands in Richards' car on the last day before Richards moved out of state for the summer. She stated that they drove past Wein's place of business, he was standing outside, Steffen asked her to stop so she could talk to Wein, and when she stopped, Wein got into the car. She added that when they got close to Chase Bank, Wein said he needed to go to the bank and asked her to stop. Richards testified that when they arrived at the bank, Steffen asked her to come inside to meet some people, and she agreed. She further testified that when she got inside, Wein motioned for her to join him at a table, asked her to sign a check, and laid the check face down on the table where she signed it. Richards further testified that Wein then motioned for her to accompany him to the teller counter where she handed Wein the check and the teller took her thumbprint. She stated that she did not recall whether she or Wein presented the check to the teller and that she did not receive the $25,000.

5

Wein testified that he wrote Richards a check instead of wiring the interest payment, as he had the repayment of the principal amount of the loan, because he wanted to pay her in person and thank her. Wein also answered questions about his bank records. He explained that the check he wrote to Richards in 2004 did not appear until his April–May 2007 statement because he has numerous checkbooks which he does not keep in order sequentially and that the transfer of $25,000 into his account on May 23, 2007, was probably transferred from another of his accounts.

Steffen testified that Wein and Richards arranged to cash the check and she was not involved, but it was her understanding that they were going to cash the check that Wein had given her earlier. She stated that she and Wein rode together and met Richards at the bank. Steffen further testified that after they cashed the check, Richards handed Steffen the money and asked her to keep it for her. She also testified that she placed the money in her personal safe at home, began using it to pay bills, and ultimately spent it all.

Following these depositions, the parties agreed to an order realigning the parties. Sherman and Alarcon, proceeding as plaintiffs, filed an original petition reasserting the claims against Wein they had originally asserted as counterclaims and adding Richards and Steffen as defendants. Alarcon asserted causes of action for fraud, fraud by nondisclosure, conspiracy, intentional infliction of emotional distress, and negligence against Richards and Steffen. Sherman asserted the same causes of action against all three defendants and later added a claim for malicious prosecution against Wein. In March 2009, the parties attended mediation, which resulted in Sherman's settlement with Richards. Under the terms of the settlement agreement signed at the conclusion of the mediation, Richards agreed to pay Sherman $90,000 in return for her dismissal

with prejudice from the lawsuit.  Subsequently, Sherman and Richards signed a second settlement agreement allocating $2,488.24 of the settlement proceeds to payment of attorney's fees and the remaining $87,5111.76 to the payment of punitive damages.  On May 13, 2009, Sherman filed a dismissal with prejudice as to Richards.

**Motion for Sanctions**

In May 2009, Sherman filed a motion for sanctions against Wein, which the district court heard over two days in June 2009.  At the hearing, Sherman offered numerous exhibits, including court records from the parties' prior litigation, pleadings and transcripts from hearings in this lawsuit, deposition excerpts, Wein's bank records, bank surveillance photographs from the day Wein and Richards cashed the $25,000 check, and an affidavit from Sherman's attorney on attorney's fees.  The bank photos showed that during the transaction in which the $25,000 check was cashed, at one point Wein and Richards stood at the teller counter together, while later in the transaction, Wein stood at the teller counter alone.  The affidavit of Sherman's attorney indicated that Sherman had incurred $113,562.60 in attorney's fees and expenses, after a deduction of $2,488.24 for the settlement amount paid by Richards.  Sherman's attorney supplemented his affidavit with testimony that Sherman had incurred an additional $3,445 in attorney's fees in preparing for and attending the hearing on the motion for sanctions.

Wein's documentary evidence included correspondence between the parties' attorneys regarding the partial release of the abstract of judgment and photographs of Sherman and Alarcon, Sherman's cameras, and the red stripe painted in front of Wein's home.  Wein also called seven witnesses.  Linette Harris, who assisted Wein's first attorney in this lawsuit, testified generally that

7

she and her co-counsel, after doing some investigation and relying on Wein's representations, had told Wein that there was some basis for the factual allegations made in his original petition. The bank teller who cashed the $25,000 check testified that she properly identified Richards, obtained her thumbprint, and handed the cash to her. She also testified that Wein and Richards were at her counter together during the entire transaction and was unable to explain the bank photo showing Wein standing at the counter alone. When shown Wein's bank statement, the teller identified a $25,000 deposit into Wein's account three weeks later as an online deposit from Wein's money market account.

Wein testified that in filing this lawsuit, he had relied on his attorney who told him he had a causes of action for invasion of privacy and trespass. When asked about his claims that Sherman's cameras could peer into his home and that Sherman could observe his family's private actions, Wein stated that the only definitive evidence he had was "still photos taken from Mr. Sherman's residence which absolutely peer into my home, back deck, and into my bedroom." Wein also stated that his attorney had the photographs, but they had not been admitted into evidence.[9] Wein further testified that he recalled testifying at the temporary injunction hearing that he did not know what the cameras could see and stated that the only photographs he had were of the cameras "clearly in a viewpoint or stance where they would have the ability to look into [his] house." He testified that he based his factual allegations regarding the cameras on his opinion and that of his expert, but said he could not clearly remember his expert's testimony at the temporary injunction hearing. Wein also acknowledged that he maintained his cause of action for invasion of privacy

---

[9] A review of the record reveals that Wein subsequently admitted photographs into evidence However, none of them displayed a view into Wein's home or deck.

8

based on the cameras in his amended petition.[10]  He also acknowledged that when he filed his petition, he had no evidence to support his allegation of wiretapping.

Concerning his trespass claim, Wein testified that the sprinkler trespass began in 2004 and he filed suit in 2006 because "there's a culmination of events."  He also testified that Sherman's sprinkler had sprayed water onto his property and driveway "for approximately five years, four or five times a day, for 15 to 20 minutes at a time."  Wein subsequently denied testifying that Sherman's sprinklers sprinkle four or five times a day.  He then stated that they sprinkled "[a]t least every other day for a period of 20 or 30 minutes in the morning" and "intermittently every other day or so," and that he and his family and guests could not avoid getting wet.  Wein acknowledged that in deposition in August 2007 he stated he was not seeking damages related to the sprinkler trespass.  Wein also testified that "a red stripe was painted 1/16th of an inch off [his] property in front of [his] home," and "part of it was on [his] property as well."  He stated that it was painted on the neighborhood common property, but there was "more than a splatter on [his] property."

Regarding his claim for slander of title, Wein testified that he relied on his attorney in the prior litigation and his first and second attorneys in this lawsuit.  He also testified that he had incurred special damages because he had borrowed money from his retirement funds to pay the prior judgment, tried to obtain a home equity loan to repay the funds, had been forced to borrow the money from Richards, paid her back in full, and gave her a check for $25,000 in interest.  Wein stated that check number 1540, payable to Richards for $25,000 and dated November 11, 2004,

---

[10]  When pressed for additional evidence, Wein stated that he had also seen Sherman physically peering into his windows.  He acknowledged that he had not made that assertion previously and did not intend to sue for it.

9

which he disclosed in discovery, was a replacement check for the original, which Richards lost. Wein also stated that he gave Richards the replacement check approximately "a year or so" after the original check, but he is not sure of the exact date. He testified that he dated the replacement check November 22, 2004, "because that was the date of the first original check that she had misplaced and it corresponded to the payment in full of the loan less the interest" and he had no duplicate check or bank record of the original check. Wein acknowledged that in his deposition in April 2008, he testified that he gave check number 1540 to Richards "on or about the 22nd of '04" but stated he had made a mistake in his prior testimony.

Wein further testified that in 2007, Richards mentioned the check and asked him if he thought she would have trouble cashing it, to which Wein replied that he would go to the bank with her, and if there were a problem, he would write another check. Wein stated that Richards and Steffen arranged to go to the bank to cash the check on the day Richards was moving out of state for the summer, and he decided to go so that he could tell Richards goodbye and to be available to write another check if necessary. Wein also stated that when they cashed the check, the teller handed Richards the cash, and he never saw it again. He then stated that Richards handed the money to Steffen and he had no idea what Steffen did with it after she put it in her purse.

Wein acknowledged that he had no proof of payment of the $25,000 to Richards at the time he filed his amended petition containing the slander of title claim alleging special damages, had not produced check number 1540 in discovery in 2004, and did not remember that it had not been produced in discovery until 2007. He denied nonsuiting his slander of title action after it became obvious that check number 1540 was being circulated under false pretenses and stated that

10

his attorney who withdrew about the same time as the nonsuit "never gave [him] a reason" for withdrawing but it "had nothing to do with" check number 1540. With regard to the subsequent $25,000 transfer into his checking account from his money market account, Wein testified that he transferred the money to pay for a building he was constructing but could not trace the exact source of those funds.

Following the hearing, the district court ordered Wein to pay Sherman $100,000 for reasonable and necessary attorney's fees and expenses "and as a sanction against Defendant Marc Wein for abuse of the discovery process, for violation of Chapter 10 of the Texas Civil Practices and Remedies Code, and for violation of Rule 13, TRCP." The district court further ordered Wein to pay Sherman $7,500 "for collection of the sanctions award if the award is not paid to William Sherman by July 6, 2009." Finally, the district court ordered Wein to pay Sherman $10,000 and $15,000, respectively, in the event of appeal to the court of appeals and supreme court.

The order stated that the sanctions were "just and made for good cause" and contained "findings to explain the reason for imposing sanctions." At Wein's request, the district court also entered findings of fact and conclusions of law. The findings in both the order and the subsequent findings of fact included that each of Wein's causes of action was "groundless, brought in bad faith and with the improper purpose of obtaining a judgment against Sherman and causing Sherman to incur significant attorney's fees and costs." The district court further found that the "$25,000 transaction was a fraudulent transaction entered into by Wein to manufacture evidence in this case" and constituted abuse of the discovery process.

**Disposition of Remaining Issues**

In September 2009, Wein filed a motion for summary judgment on all of Sherman's and Alarcon's claims, contending that Sherman and Alarcon were not seeking, and there was no evidence to support, any damages other than attorney's fees, that the causes of action asserted do not support an award of attorney's fees, and that there can be no award of attorney's fees without actual damages.[11] In January 2010, without specifying the grounds on which it relied, the district court granted Wein's motion for summary judgment.

Following the entry of summary judgment dismissing Sherman's and Alarcon's claims, the only issue remaining to be determined was Wein's pending motion for settlement credit, an issue that was expressly reserved in both the sanctions order and summary judgment dismissing Sherman's and Alarcon's claims. In the motion, Wein sought a credit against the sanctions award for Richards' settlement payment. In March 2010, the district court denied Wein's motion for settlement credit. At Wein's request, the district court entered corresponding findings of fact and conclusions of law. The district court's findings included that the sanctions award was based on Wein's abuse of discovery and violation of various statutes and not on a determination of liability sounding in tort. The district court concluded that the settlement payment did not represent payment for common damages between Wein and Richards, that "[t]he purpose of sanctions is to secure a party's compliance with the rules, punish those who violate the rules, and to deter other litigants

---

[11] Wein also argued that there was no evidence to support an award of damages for mental anguish and that Sherman's claims could not be construed as claims for malicious prosecution because such claims arise only after the underlying case is concluded.

from violating the rules" and that "Wein's sanctions were assessed against him individually . . . and . . . are not damages for which joint and several liability could attach."

In May 2010, the district court rendered final judgment incorporating the sanctions award, conditioning the award of appellate attorneys fees on Wein's unsuccessful appeal, and denying all other relief. Wein filed a motion to modify judgment, alternative motion for remittitur, and alternative motion for new trial, which was overruled by operation of law. This appeal followed.

## DISCUSSION

### Award of Sanctions

#### *Standard of Review*

In his first issue, Wein contends that the district court erred in its determination of sanctions. We review a trial court's imposition of sanctions for abuse of discretion. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam). We will reverse the trial court's ruling only if it is arbitrary, unreasonable, or without reference to any guiding rules or principles. *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). "The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision." *Unifund*, 299 S.W.3d at 97 (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998)).

Under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). In reviewing the legal sufficiency of the evidence, we view the evidence in the light most

13

favorable to the judgment, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The test is "whether the evidence at trial would enable reasonable and fair-minded people to reach the [judgment] under review." *Id.* at 827. In reviewing factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In determining whether the trial court abused its discretion in awarding sanctions, we must ensure that the sanctions were appropriate or just. *American Flood*, 192 S.W.3d at 583 (citing *TransAmerica Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 916 (Tex. 1991)). The supreme court has articulated a two-part inquiry: First, we must ensure that there is a direct relationship between the improper conduct and the sanction imposed; because the sanction should be directed toward the true offender, the trial court must attempt to determine whether sanctions should be imposed on the party, its attorney, or both. *American Flood*, 192 S.W.3d at 583–84; *TransAmerican*, 811 S.W.2d at 917. Second, the sanction must not be excessive. *American Flood*, 192 S.W.3d at 583–84; *TransAmerican*, 811 S.W.2d at 917. The sanction "should be no more severe than necessary to satisfy its legitimate purposes." *TransAmerican*, 811 S.W.2d at 917. In determining whether a sanction is just, we must review the entire record, *American Flood*, 192 S.W.3d at 583, and confine our review of the sanctions order to the grounds specified by the trial court. *Id.* at 583–84; *Unifund*, 299 S.W.3d at 94 n.1; *Pool v. Diana*, No. 03-08-00363-CV, 2010 Tex. App. LEXIS 2208, at *24 (Tex App.—Austin Mar. 24, 1010, pet. denied).

*Sanctions Order*

The district court imposed sanctions against Wein for violations of Chapter 10 of the Texas Civil Practices and Remedies Code and Rule 13 of the Rules of Civil Procedure and for abuse of discovery. *See* Tex. Civ. Prac. & Rem. Code §§ 10.001–.006; Tex. R. Civ. P. 13, 215.3 (Abuse of Discovery Process in Seeking, Making, or Resisting Discovery). Chapter 10 allows sanctions for filing a pleading or motion "for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation." Tex. Civ. Prac. & Rem. Code §§ 10.001(1), .004. Rule 13 provides that a court may impose sanctions upon a determination that a pleading or motion is groundless and brought in bad faith or groundless and brought for the purpose of harassment. Tex. R. Civ. P. 13. Rule 215.3 authorizes sanctions upon a finding that a party has abused the discovery process. Tex. R. Civ. P. 215.3. Chapter 10 and Rules 13 and 215.3 all specify attorney's fees caused by the improper conduct as an appropriate sanction. *See* Tex. Civ. Prac. & Rem. Code § 10.004(c)(3); Tex. R. Civ. P. 13 (incorporating sanction available under Rule 215.2(b)(8)), 215.3 (same).

The district court's order states that "the sanctions awarded herein are just and made for good cause," and the corresponding findings of fact track the language of Chapter 10 and Rules 13 and 215.3 in stating that Wein's claims were groundless and brought in bad faith and with an improper purpose. The findings also track the language of Rule 215.3 in stating that "the $25,000 transaction was a fraudulent transaction entered into by Wein to manufacture evidence in this case" and "constitutes abuse of the discovery process." Further, the district court's conclusions of law include that Wein violated Chapter 10 and Rule 13 and committed abuse of the discovery process.

15

If the district court's imposition of sanctions is supported on one of these legal bases, we will uphold the order. *See Zeifman v. Nowlin*, 322 S.W.3d 804, 809 (Tex. App.—Austin 2010, no pet.).

### *Appropriateness of Sanction*

Reviewing the entire record, we conclude that there is ample evidence to support a sanction against Wein under Rule 215.3 for abuse of discovery. *See American Flood*, 192 S.W.3d at 583–84 (upholding monetary sanction award under Rule 215.3 for repeated refusal to appear for deposition). The evidence showed that Wein's testimony was inconsistent, both internally and with that of other witnesses, as well as in conflict with documentary evidence. Wein admitted that he had no evidence to prove his special damages of $25,000 in interest paid to Richards when he asserted his claim for slander of title. As fact finder, the district court was entitled to evaluate the credibility of the testimony and determine what weight to give it. *Alpert v. Crain, Caton, & James, P.C.*, 178 S.W.3d 398, 412 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Considering all of the conflicting evidence, as well as the evolving nature of Wein's testimony and the timing of his nonsuit of his slander of title claim, the district court could have reasonably determined that the $25,000 transaction was a fraudulent attempt to manufacture evidence. *See Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (affirming sanction of striking pleadings where trial court, based on conflicting evidence that included expert testimony to the contrary, concluded that party had fabricated evidence); *Response Time v. Sterling Commerce*, 95 S.W.3d 656, 662 (Tex. App.—Dallas 2002, no pet.) (upholding death penalty sanction where evidence showed party testified falsely and produced false documents); *see also Werley v. Cannon*, 344 S.W.3d 527, 535 (Tex. App.—El Paso 2011, no pet.) (upholding sanction award of attorney's

16

fees for abuse of discovery resulting from ex parte contacts with witnesses in violation of protective order and attempts to subvert testimony).

In addition, the evidence supports an imposition of sanctions under Chapter 10 and Rule 13. The act of fabricating evidence strongly suggests that Wein had no legitimate evidence of damages to support his slander of title claim. *See Kelley Oil Corp.*, 981 S.W.2d at 235; *see also TransAmerica*, 911 S.W.3d at 918 (noting party's hindrance of discovery process may justify presumption that its claims lack merit). The record also shows that Wein had little to no evidence to support his claims for invasion of privacy and trespass when he instituted this lawsuit and that he maintained those claims despite failing to develop supporting evidence during discovery. Wein's testimony regarding these claims was inconsistent, and he admitted he suffered no damages from the alleged sprinkler trespass, seeks only "future damages" for the "more than a spatter" on his property from the painting of the red stripe, and failed to produce any evidence of damages from the alleged invasion of privacy. Moreover, his testimony revealed extreme hostility toward Sherman. In light of this evidence and the parties' multi-year battle, the district court could have reasonably determined that Wein's claims were groundless, brought in bad faith, and filed for the improper purpose of incurring a judgment against Sherman and causing him to incur needless and unreasonable attorney's fees and expenses. *See* Tex. Civ. Prac. & Rem. Code §§ 10.001, .004; Tex. R. Civ. P. 13; *Low v. Thomas*, 221 S.W.3d 609, 621 (Tex. 2007) (upholding award of sanctions under Chapter 10 when pleading lacked evidentiary support but remanding for reconsideration of amount in absence of stated basis by trial court); *Daniels v. Indemnity Ins. Co.*, 345 S.W.3d 736, 742 (Tex. App.—Dallas 2011, no pet.) (affirming sanctions under Chapter 10 and Rule 13 where trial court determined lawsuit

17

brought to circumvent adverse ruling in related litigation and increase cost of litigation for opposing party); *Zeifman*, 322 S.W.3d at 811 (affirming sanctions under Rule 13 where trial court found pleading had no basis and lacked evidentiary support).

Having concluded that the evidence supports the imposition of a sanction, we turn to a determination of whether the sanction awarded was appropriate or just. *American Flood*, 192 S.W.3d at 583; *TransAmerica*, 811 S.W.2d at 917. Applying the two-part test articulated by the supreme court, we must first determine whether there is a direct relationship between the sanctionable conduct and the sanction imposed. *American Flood*, 192 S.W.3d at 583; *TransAmerica*, 811 S.W.2d at 917. The evidence shows that Wein, rather than any of his numerous attorneys, was the offender in bringing and maintaining groundless claims and committing discovery abuse. The sanction of attorney's fees is directed against the commission of groundless, bad faith filings and discovery abuse and is an appropriate sanction under Chapter 10 and Rules 13 and 215.3. *See* Tex. Civ. Prac. & Rem. Code § 10.004; Tex. R. Civ. P. 13, 215.3; *American Flood*, 192 S.W.3d at 584; *Daniels*, 345 S.W.3d at 742. Because the record supports a finding that Wein's conduct, and not that of his attorneys, was sanctionable, there is a direct relationship between the improper conduct and the sanction.[12] *See American Flood*, 192 S.W.3d at 584; *Werley*, 344 S.W.3d at 534.

---

[12] Wein contends that the fees awarded do not have a direct nexus to the sanctionable conduct because they were not properly segregated. In support of this argument, Wein cites *Low v. Thomas*, 221 S.W.3d 609 (Tex. 2007) and *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006). These cases, however, do not support Wein's argument. In *Low*, the supreme court remanded an award of $50,000 in sanctions under Chapter 10 solely because the trial court failed to state the basis of the amount awarded and the supreme court could not determine the basis from the record. *See id.* at 621–22. Holding that a trial court should consider relevant factors in assessing the sanction and that a determination of the amount of a sanction under Chapter 10 should begin with an acknowledgment of the fees and costs incurred, the supreme court then remanded the case for reconsideration of the amount of the sanction in light of those guidelines. *Id.* at 622. In doing so,

We next consider whether the sanction amount was excessive. Sherman's attorney presented itemized bills stating the work done and the time and amount billed for each entry. He testified that Sherman had incurred $117,007.60 in reasonable and necessary attorney's fees and expenses. Considering the entire record, and in light of cases in which the courts have upheld the death penalty sanction for fraudulent conduct, *see, e.g.*, *Kelley Oil Corp.*, 981 S.W.2d at 235–36; *Response Time*, 95 S.W.3d at 661–62, we conclude that the district court's award of $100,000 was not excessive.[13]  *See Werley*, 344 S.W.3d at 534–35 (sanction of $12,660 not excessive

the supreme court cited *Tony Gullo*, 212 S.W.3d at 314–15. *Id.* However, the supreme court relied on its prior holding in *Tony Gullo* for the proposition that remand was proper to allow the parties to present evidence responsive to its guidelines and to allow the trial court to determine the appropriate amount of the sanction, not for the proposition that attorney's fees must be segregated for the purpose of sanctions awards. *Id.* at 621–22.

Nor does *Tony Gullo* stand for the proposition that attorney's fees must be segregated for purposes of a sanction award. Rather, *Tony Gullo* states the general rule that a party seeking attorney's fees as part of its principal claims must segregate fees incurred in connection with a claim that allows their recovery from fees incurred in connection with a claim for which no such recovery is allowed. 212 S.W.3d at 313–14; *see also Keys v. Litton Loan Servicing. L.P.*, No. 14-07-00809--CV, 2009 Tex. App. LEXIS 9017, at *22–23 (Tex. App.—Houston [14th Dist.] Nov. 24, 2009, no pet.) (mem. op.). Thus, Wein cites no authority, and we have found none, to support his contention that the concept of segregation of attorney's fees applies to the award of attorney's fees as a sanction.

[13]  While Wein does not dispute that Sherman actually incurred more in fees than the amount awarded, he argues that the sanction amount is nevertheless excessive because the majority of Sherman's fees were incurred in pursuit of his motion for sanctions after Wein's claims were dismissed. Wein contends that, in contrast with Rule 215.1(d), which authorizes attorney's fees incurred in bringing or opposing a motion to compel discovery, Chapter 10 and Rules 13 and 215.3 do not expressly provide for the recovery of attorney's fees incurred in pursuing sanctions. We find this argument unpersuasive. Chapter 10 allows as a sanction fees incurred "because of" the frivolous filing. *See* Tex. Civ. Prac. & Rem. Code § 10.004(c)(3). Available sanctions under Rules 13 and 215.3, by reference to Rule 215.2, include expenses of discovery and attorney's fees "caused by" the "disobedient party." *See* Tex. R. Civ. P. 215.2(b)(2), (8). Fees and expenses incurred "because of" or "caused by" the "disobedient party" reasonably include those incurred in pursuing a motion for sanctions.

Further, Wein does not cite any cases, and we have found none, in which the courts refused

where evidence showed party had incurred that amount in attorney's fees); *Sellers v. Gomez*, 281 S.W.3d 108, 116 (Tex. App.—El Paso 2008, no pet.) (award of $80,000 sanction not excessive where evidence showed attorney's fees of $81,000–$82,000); *Scott Bader, Inc. v. Sandstone Prods.*, 248 S.W.3d 802, 817 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (upholding sanction of $68,000 in attorney's fees where evidence showed discovery abuse justified that amount even in absence of competent proof of necessity and reasonableness); *In re M.I.L.*, No. 02-08-00349-CV, 2009 Tex. App. LEXIS 4645, at *18 (Tex. App.—Fort Worth June 18, 2009) (mem.op.), *overruled in part on other grounds by Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011) (sanction of $38,000 not excessive where evidence showed party had incurred $38,362 in attorney's fee and $2,071.23 in expenses).

While we acknowledge that the amount of the award is substantial, we conclude that it is not excessive in light of the entire record and considering that it was intended not only to reimburse Sherman but also to punish Wein and deter similar conduct in the future. *See American Flood*, 192 S.W.3d at 583; *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992) (legitimate purposes of sanctions are to secure compliance with rules, deter similar misconduct, and punish violators). On the record before us, we cannot say that the district court abused its discretion

to allow a sanction award to include fees and expenses incurred in obtaining the sanction. Rather, the authority we have found supports the inclusion of the costs of pursing the motion for sanction. *See, e.g.*, *Wythe II Corp. v. Stone*, 342 S.W.3d 96, 109 (Tex. App.—Beaumont 2011, pet. denied) (award of fees incurred *in pursuing motion for sanctions* under Chapter 10, Rule 13, and Rule 215 for submission of false testimony upheld but remanded for reconsideration of reasonableness of amount); *Werley v. Cannon*, 344 S.W.3d 527, 534–35 (Tex. App.—El Paso 2011, no pet.) (upholding sanction for attempt to subvert testimony which included amount for fees incurred on sanctions matter).

in ordering Wein to pay Sherman $100,000 in attorney's fees. *See Unifund*, 299 S.W.3d at 97; *American Flood*, 192 S.W.3d at 583.[14]

Wein also challenges the district court's award of $7,500 to Sherman "for collection of the sanctions award, if the award is not paid to William Sherman by July 6, 2009." Wein contends that there is no legal basis for awarding this "collections" amount because it cannot represent attorney's fees incurred as a result of the sanctionable conduct and is simply a penalty, which must be paid to the court, not to the litigants. However, the record shows that Sherman's attorney testified that reasonable and necessary attorney's fees for collection of the sanctions, if required, would be $7,500, and Wein did not challenge this testimony on cross-examination. Further, the legitimate purposes of sanctions include the goals of securing compliance. *See Chrysler Corp.*, 841 S.W.2d at 849. The trial court could have reasonably determined that the "collections" award would operate to ensure Wein's compliance with the order and that, should collection efforts become necessary, the fees and expenses incurred would be "caused by" the "disobedient party" and "because of" Wein's frivolous filing. *See* Tex. R. Civ. P. 13, 215.2(b)(2), (8); Tex. Civ. Prac. & Rem. Code § 10.004(c)(3). Thus, there is some evidence that the award of $7,500 for collection of the sanctions award was directly related to the sanctionable conduct and was not excessive, *see American Flood*, 192 S.W.3d at 583; *TransAmerica*, 811 S.W.2d at 917, and we cannot say that the trial court abused its discretion in awarding the "collections" sanction amount. *See Unifund*, 299 S.W.3d at 97.

---

[14] Wein also requests this Court to enter a remittitur "to reduce the excessiveness of the judgment." We deny this request.

21

In his last complaint regarding the sanctions order, Wein challenges the district court's award of attorney's fees conditioned upon unsuccessful appeals to this Court and to the supreme court, contending that this amount also constitutes a penalty. However, while a trial court may not penalize party for taking a successful appeal, a trial court may grant appellate attorney's fees as part of a sanctions order under Rule 215 if the court conditions the award on the outcome of the appeal. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998, orig. proceeding); *Hoefker v. Elgohary*, 248 S.W.3d 326, 332–33 (Tex. App.—Houston [1st Dist] 2007, no pet); *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 205 (Tex. App.—Austin 1992, no writ). A conditional award of appellate fees is part of a sanctions award of trial court costs, designed to compensate for the expense of defending the trial court award, *see Loeffler v. Lytle I.S.D.*, 211 S.W.3d 331, 351 (Tex. App.—San Antonio 2006, pet denied.), and the district court did not abuse its discretion in awarding such appellate attorney's fees. Therefore, we overrule Wein's first issue.

**Settlement Credit**

***Standard of Review***

In his second issue, Wein contends that the district court erred in failing to apply a credit against the award of sanctions for Richards' settlement payment. The parties disagree about which standard of review we are to apply. Wein asserts that we should conduct a review for legal and factual sufficiency of the evidence but cites no authority. Sherman contends that allocation of settlement credits is reviewed for abuse of discretion, citing this Court's decision in *Utts v. Short*, No. 03-03-00512-CV, 2004 Tex. App. LEXIS 2874 (Tex. App.—Austin, Apr. 1, 2004, pet. denied)

(mem. op.) and *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307 (Tex. App.—Houston [1st Dist.] 2004, pet. denied.). In *Utts*, however, we noted that our analysis did not include statutory construction, the defendant's entitlement to a settlement credit was not in dispute, and only the amount to be credited to each plaintiff was at issue. 2004 Tex. App. LEXIS 2874, at *9–10. Similarly, in *Oyster Creek*, the court applied an abuse of discretion standard where there were factual disputes concerning the character of the settlement and the allocation of the settlement credit. 176 S.W.3d at 326. Here, our analysis turns on questions of statutory construction and application of legal principles, and we do not reach the questions of disputed facts concerning the settlement allocation.[15] Therefore, we review the district court's determination of the settlement credit de novo. *See Galle, Inc. v. Pool*, 262 S.W.3d 564, 571 n.3 (Tex. App.—Austin 2008, pet. denied); *Sugar Land Props., Inc. v. Becnel*, 26 S.W.3d 113, 119 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (applying de novo standard where resolution of issue required interpretation of two statutory provisions).

Wein also challenges the district court's findings of fact and conclusions of law on the issue of the settlement credit. A trial court's findings of fact are subject to review for legal and factual sufficiency of the evidence by the same standards applied to a jury verdict. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We review a trial court's conclusions of law de novo and will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a

---

[15] Wein raises factual issues concerning his allegations that the settlement agreement between Sherman and Richards allocating amounts to actual and punitive damages was a sham and that there were no actual damages to support an award of punitive damages. However, because of our disposition of this issue, we do not reach these factual issues.

23

trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.*

### *One-satisfaction Rule*

Wein seeks a settlement credit under the one-satisfaction rule. The one-satisfaction rule is the longstanding proposition that precludes a plaintiff from recovering twice for the same injury. *Utts v. Short*, 81 S.W.3d 822, 831 (Tex. 2002) (citing *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000)); *Galle*, 262 S.W.3d at 573. The rule applies when several defendants commit the same act and when multiple defendants commit technically different acts that result in a single injury. *Crown Life*, 22 S.W.3d at 390; *Galle*, 262 S.W.3d at 573. The one-satisfaction rule guards against a plaintiff's "receiving a windfall 'by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already contributed.'" *Galle*, 262 S.W.3d at 573 (quoting *Osborne v. Jauregui*, 252 S.W.3d 70, 75 (Tex. App.—Austin 2008, pet. denied) (en banc)).

Wein contends that Sherman is attempting to collect from Wein damages for the same injury for which he has already collected from Richards by way of settlement. However, although Richards paid a sum in settlement of Sherman's claims against her, Sherman received no damages in court for his claimed injuries; the district court dismissed his claims on summary judgment. The attorney's fees the district court ordered Wein to pay were as a *sanction* for Wein's "wrongful conduct," not as compensation for Sherman's alleged injuries. Sanctions are not damages for harm alleged in the underlying lawsuit but are used to punish parties who file groundless, bad faith, or frivolous pleadings, *see* Tex. R. Civ. P. 13; Tex. Civ. & Prac. & Rem. Code §§ 10.001, .004, or

24

violate discovery rules, *see* Tex. R. Civ. P. 215.3; *Cire*, 134 S.W.3d at 843. Thus, the sanctions award did not constitute compensation for the same harm for which Sherman recovered in settlement with Richards. *Cf. Teel v. American Title Co.*, No. 14-00-00375-CV, 2001 Tex. App. LEXIS 6422, at *7–8 (Tex. App. —Houston [14th Dist.] Sept. 20, 2001, pet. denied) (not designated for publication) (one-satisfaction rule did not apply because appellant sought recovery for injury for which she had not been previously compensated; prior recovery was for different damages under different cause of action). Wein has cited no cases, and we have found none, in which a court has applied the one-satisfaction rule to reduce a sanctions award. We decline to do so here.

### *Chapter 33*

Wein also contends that, to the extent Sherman asserts tort claims, Wein is entitled to a settlement credit under Chapter 33 of the Texas Civil Practices and Remedies Code. Chapter 33 governs settlement credits with respect to "any cause of action based on tort in which a defendant . . . is found responsible for a percentage of the harm for which relief is sought." Tex. Civ. Prac. & Rem. Code §33.002(a)(1). Section 33.012 requires that, if a claimant has settled with one or more persons, the court must reduce the amount of damages to be recovered by the claimant by the amount of all settlements. *Id.* § 33.012(b). Chapter 33 does not define "settled" or "settlement" but defines "settling person" as "a person who has . . . paid or promised to pay money or anything of monetary value to a claimant in consideration of potential liability with respect to . . . harm for which recovery of damages is sought." *Id.* § 33.011(5) (West 2008). Read together, these provisions contemplate that Chapter 33 applies if Sherman was compensated in the settlement with Richards for the same harm for which he was compensated by the sanctions award. *See Galle*, 262 S.W.3d at 571.

25

Under this analysis, Wein's argument under Chapter 33 fails for the same reasons that his argument under the one-satisfaction rule fails. As we have already discussed, Richards paid a sum to Sherman in an exchange for a release from all liability. In contrast, the district court ordered Wein to pay attorney's fees as a sanction for his improper conduct, not as a consequence of a determination of his liability for damages to Sherman. The district court found that the sanctions award was for abuse of discovery and statutory violations, not based on a determination of liability sounding in tort. The district court concluded that Richards' settlement payment did not represent common damages between Richards and Wein, the sanction was assessed against Wein individually, and the sanctions award was not damages for which joint and several liability could attach. There is legally and factually sufficient evidence to support these findings, and the conclusions of law are supported by Chapters 10 and 33 and Rules 13 and 215.3. *See* Tex. R. Civ. P. 13, 215.3; Tex. Civ. Prac. & Rem. Code §§ 10.001(1), .004(b)(3); 33.002(a)(1), .011(5), .012(b). Thus, Sherman was not compensated in the settlement with Richards for the same harm for which he was compensated by the sanctions award, and Chapter 33 does not apply. We overrule Wein's second issue.

**Summary Judgment Dismissing Sherman's Claims**

**Standard of Review**

In his cross-appeal, Sherman challenges the district court's summary judgment dismissing his claims. We review the trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Mack Trucks, Inc. v. Tamez*,

26

206 S.W.3d 572, 582 (Tex. 2006); *Dorsett*, 164 S.W.3d at 661.  A motion for summary judgment is properly granted when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).  When the trial court does not specify the grounds for its summary judgment, the appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious.  *Knott*, 128 S.W.3d at 216.

### *Evidence of Damages to Support Claims*

One of the grounds Wein asserted in his motion for summary judgment was that the evidence showed Sherman had incurred no damages other than attorney's fees and there can be no award of attorney's fees without actual damages.  Sherman does not dispute that his only damages were attorney's fees but contends that the attorney's fees *are* his actual damages.  The issue then is whether the district court erred in granting summary judgment when Sherman's only damages were attorney's fees incurred as a result of Wein's instigating and maintaining this suit.

Texas has long followed the "American Rule," which prohibits an award of attorney's fees unless specifically provided by contract or statute.  *MBM Fin. Corp. v. The Woodlands Operating Co.*, 292 S.W.3d 660, 6693d (Tex. 2009).  Here, there is no contract between the parties, and Sherman does not seek attorney's fees under any statutory provision.  Rather, he contends that because Wein filed a fraudulent lawsuit against him, causing him to expend money in attorney's fees and expenses, he is entitled to recover those fees and expenses as actual damages.

27

Attorney's fees, however, are ordinarily not recoverable as actual damages in and of themselves. *See Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 81–82, 83 (Tex. 2003) (attorney plaintiffs who sought to recover damages based solely on value of time and costs incurred in defending claims had not suffered actual damages and were not entitled to only damages they claimed; plaintiffs should have pursued attorney's fees as sanctions under Rule 13 or Chapter 10); *Worldwide Asset Purchasing, L.L.C. v. Rent-a-Center East, Inc.*, 290 S.W.3d 554, 570 (Tex. App.—Dallas 2009, no pet.) (attorney's fees not recoverable as actual damages); *Haden v. David J. Sacks, P.C.*, 222 S.W.3d 580, 597 (Tex. App.—Houston [1st. Dist.] 2007) (same), *rev'd on other grounds*, 266 S.W.3d 447 (Tex. 2008); *Quest Commc'ns Int'l, Inc. v. AT&T Corp.*, 114 S.W.3d 15, 35–36 (Tex. App.—Austin 2003) (damages measured by plaintiff's attorney's fees recoverable only under certain exceptions not implicated here), *rev'd in part on other grounds*, 167 S.W.324 (Tex. 2005) (per curiam). Because Sherman neither sought nor proved any damages other than attorney's fees, there is no evidence to support the actual damage element of any of his asserted claims, and the district court did not err in granting summary judgment in Wein's favor. We overrule Sherman's cross-issue.

## CONCLUSION

Having overruled Wein's issues, we affirm the trial court's judgment.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Pemberton, and Goodwin

Affirmed

Filed:   August 23, 2013

29