COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| S. GARY WERLEY, | § | No. 08-09-00204-CV |
| Appellant, | § | Appeal from the |
| v. | § | 101st Judicial District Court |
| | § | of Dallas County, Texas |
| BRANDY CANNON AND MATTHEW R. CANNON, | § | (TC# 09-04045) |
| Appellees. | § | |

**O P I N I O N**

Attorney S. Gary Werley appeals a judgment awarding Brandy and Matthew Cannon

attorneys' fees and costs as a sanction for violating a protective order. On appeal, Mr. Werley

argues the trial court abused its discretion in entering the protective order and in sanctioning him.

He also argues the court erred in entering the final judgment because it was based on the

sanctions order. Finally, Mr. Werley contests the trial court's award of appellate attorneys' fees

in the final judgment. We affirm.[1]

The Cannons and Andrew Smith, a minor child, sued Dr. Scott Ashton, Ashton Podiatry

Associates, and ISR Partners for medical malpractice. Their complaint alleged that Ms. Cannon

underwent a bunionectomy, based on Dr. Ashton's recommendations, to resection and reshape

the head of the first metatarsal bone in her left foot to alleviate pain and restore normal walking.

---

[1] Because this is a transfer case, we must apply precedent of the Fifth Court of Appeals if our decision would otherwise be inconsistent with the transferor court's precedent. *See* TEX.R.APP.P. 41.3.

After Dr. Ashton performed this surgery and discharged Ms. Cannon, she experienced excruciating pain, so she returned to see him. From additional X-rays of her foot, Ms. Cannon noticed the bone in her great toe was about one-half inch shorter than it was before the surgery. Dr. Ashton told her that this and her sensations of pain were normal. At her next appointment, Dr. Ashton told Ms. Cannon that she had a bunion on her right foot and recommended that she have surgery for it before her health insurance incurred a new deductible. Ms. Cannon later underwent a similar surgical procedure on her right foot. When she returned to Dr. Ashton's office to have her right foot X-rayed, she noticed the bone in her right foot was shortened and expressed concern. Dr. Ashton assured her once again that all was well. Over the next few months, Ms. Cannon continued to visit Dr. Ashton's office, and Dr. Ashton continued to reassure her that "everything was going well," and prescribed a tranquilizer for her. According to the complaint, Ms. Cannon has not been pain-free or able to walk normally since she had the first surgery.

The plaintiffs filed a motion for a protective order to guard Ms. Cannon's privacy rights and to prohibit the defendants from engaging in *ex parte* communications with her non-party treating physicians. The plaintiffs claimed that after her visits with Dr. Ashton, Ms. Cannon sought care from other doctors, including Dr. Steven Berkey, who made a note in her medical chart that his X-rays showed "severe over-aggressive bone removal during the bunion surgery." However, a month after this suit was filed, Dr. Berkey made another note in Ms. Cannon's chart indicating that he had spoken with Dr. Ashton, and that, "[b]ased on this new information, in [Dr. Berkey's] opinion, the stress fracture(s) that Brandy Cannon experienced were due to the short first metatarsal (which was present prior to the bunionectomy) and not to the narrowed first

metatarsal head as noted on the x-rays [he] took in [his] office." The plaintiffs argued that these facts made it "quite clear that Dr. Berkey was contacted by Defendant Ashton." After a hearing, the trial court granted the motion and prohibited the defendants "from any *ex parte* contacts with non-party treating physicians of Brandy Cannon."

The plaintiffs later filed consolidated motions for sanctions, which alleged, among other things, that Mr. Werley had engaged in *ex parte* contacts and other attempts to subvert the testimonies of Ms. Cannon's past and current doctors, including Dr. Singleton, Dr. Crates, Dr. Cook, and Dr. Berkey. After a hearing, the court ordered Mr. Werley to pay $12,660 in attorneys' fees and $500 in costs to the plaintiffs. The court also prohibited the defendants from designating Ms. Cannon's treating physicians as expert witnesses and ordered that portions of Dr. Cook's deposition be stricken.

Thereafter, the plaintiffs and the defendants settled the underlying lawsuit for policy limits. The Cannons moved to sever the sanction awarded against Mr. Werley from the rest of the suit and to assign it a new cause number on the basis that the parties had settled the underlying cause of action. They also moved to dismiss the underlying suit, Cause No. 07-10336, with prejudice. On April 3, 2009, the trial court granted the motion to sever the sanction against Mr. Werley in the amount of $12,660 and assigned the severed action a new cause number. On the same day, the trial court granted the Cannons' motion to dismiss each claim against Dr. Ashton and Ashton Podiatry Associates with prejudice. This order stated in part: "This dismissal does not pertain to and has no effect on the $12,660.00 in sanctions ordered by the Court against Gary Werley, severed from this action by a separate order on this date." The Cannons later filed a motion for entry of judgment, which the trial court granted on May 19,

2009. In the final judgment, the court awarded the Cannons $12,660 from Mr. Werley, as well as appellate attorneys' fees in the event that Mr. Werley made unsuccessful appeals to the court of appeals and to the Texas Supreme Court.

In Issue One, Mr. Werley argues the trial court abused its discretion in entering the protective order prohibiting the defendants from having any *ex parte* communications with all of Ms. Cannon's non-party treating physicians and in entering the sanctions order and the final judgment.

We first address Mr. Werley's argument regarding the protective order. We agree with the Cannons' argument that the trial court's plenary power expired thirty days after it signed the agreed order granting the Cannons' motion to dismiss Cause No. 07-10336 with prejudice. A trial court retains plenary power to grant a new trial or to vacate, modify, correct, or reform a judgment within thirty days after the judgment is signed. TEX.R.CIV.P. 329b(d); *First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex. 1984)(orig. proceeding)(per curiam). If no party to a judgment files a motion to extend the trial court's plenary power, the trial court loses plenary power over the judgment thirty days after the judgment is signed. *Pollard v. Pollard*, 316 S.W.3d 246, 251 (Tex.App.--Dallas 2010, no pet.). After the expiration of those thirty days, the trial court has no authority to set aside a judgment except by bill of review for sufficient cause. TEX.R.CIV.P. 329b(f); *Thursby v. Stovall*, 647 S.W.2d 953, 954 (Tex. 1983)(orig. proceeding) (per curiam).

The protective order was issued in trial court Cause No. 07-10336. This appeal is limited to those matters that were severed to trial court Cause No. 09-04045 by the order of severance. Because there was no timely challenge to the dismissal of Cause No. 07-10336, whether by a

motion to reinstate the case, a motion for new trial, any motion that would have extended the trial court's plenary power, an appeal, or a bill of review, we cannot address Mr. Werley's issue related to the protective order in this appeal. *See* TEX.R.CIV.P. 165a & 329b; TEX.R.APP.P. 26.1. When the trial court's plenary power expired, the order of dismissal with prejudice became final. *See Pollard*, 316 S.W.3d at 251. Therefore, we overrule Issue One to the extent that the trial court erred in entering the protective order.

We now turn to Mr. Werley's argument that the court erred in granting the $12,660 sanction against him. We review a trial court's ruling on a motion for sanctions under an abuse of discretion standard. *See Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion when its ruling is arbitrary and unreasonable and without reference to any guiding rules and principles. *Id*. at 838-39. In conducting our review, we are not limited to considering the "sufficiency of the evidence" to support the trial court's findings; rather, we make an independent inquiry of the entire record to determine if the court abused its discretion by imposing the sanction. *See Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex.App.--Houston [1st Dist.] 1998, pet. denied)(op. on reh'g).

Mr. Werley challenges the sanctions order, as well as the final judgment, by arguing that the trial court only found for the Cannons on one out of the five allegations in their sanctions motions, that the evidence showed he never contacted a "non-party treating physician" as stipulated in the protective order, and that the Cannons' attorneys produced insufficient evidence of attorneys' fees and costs. Mr. Werley also argues the sanction was unjust because "[t]he Plaintiffs showed no prejudice or harm, the Court did not consider any prejudice, the Court did not consider less stringent sanctions, and the Court did not require the Plaintiffs to segregate the

attorneys' fees between the portions of the voluminous Motion for Sanctions on which no sanctions were awarded and that one portion on which they were granted."

Discovery sanctions are authorized by Texas Rule of Civil Procedure 215. If a trial court finds that a party is abusing the discovery process in seeking, making, or resisting discovery, then the trial court may, after notice and hearing, impose any appropriate sanction authorized by Rule 215.2(b)(1)-(5) and (8). TEX.R.CIV.P. 215.3. Rule 215.2(b)(2) permits a trial court to order a disobedient party or the attorney advising him to pay all or any portion of the expenses of discovery, taxable court costs, or both. Section 215.2(b)(8) permits a trial court to require a party failing to obey an order or the attorney advising him, or both, to pay the reasonable expenses, including attorneys' fees, caused by the failure to obey the order.

Sanctions are used to assure compliance with discovery and deter those who might be tempted to abuse discovery in the absence of a deterrent. *Cire*, 134 S.W.3d at 839. However, a trial court may not impose a sanction that is more severe than necessary to satisfy its legitimate purpose. *Id*.; *see TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Rule of Civil Procedure 215.2 authorizes a trial court to enter "just" sanctions against the party or the attorney advising the party when the party fails to comply with a discovery order. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006).

In determining whether the trial court abused its discretion, we must ensure that the sanctions were appropriate or just. *Am. Flood Research*, 192 S.W.3d at 583. To determine if the sanctions were appropriate or just, we undertake a two-part inquiry. *Am. Flood Research*, 192 S.W.3d at 583. First, there must be a direct nexus between the offensive conduct and the sanction imposed. *Id*. We should "examine whether punishment was imposed upon the true

-6-

offender and tailored to remedy any prejudice" caused by the conduct. *Id*. Second, we must make certain that less severe sanctions would not have been sufficient to promote compliance. *Id*. That is, a sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes, which includes securing compliance with discovery rules, deterring other litigants from similar misconduct, and punishing violators. *TransAmerican*, 811 S.W.2d at 917; *see Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003); *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). The Texas Supreme Court requires courts to consider whether less stringent sanctions would fully promote compliance. *TransAmerican*, 811 S.W.2d at 917; *see Cire*, 134 S.W.3d at 839; *Spohn Hosp.*, 104 S.W.3d at 882. Furthermore, absent any evidence as to the amount of the attorneys' fees reasonably incurred as a result of the sanctionable conduct, the order is unjust. *See* Tex.R.Civ.P. 215; *In re Ford Motor Co.*, 988 S.W.2d 714, 718 (Tex. 1998); *TransAmerican*, 811 S.W.2d at 917; *Darya, Inc. v. Christian*, 251 S.W.3d 227, 232 (Tex.App--Dallas 2008, no pet.); *Hanley v. Hanley*, 813 S.W.2d 511, 522-23 (Tex.App.--Dallas 1991, no writ).

> In May 2006, Dr. Berkey made the note below in Ms. Cannon's medical chart:
>
> Xrays reveal aggressive bone resection 1st met. head and neck. It is difficult to tell what procedure was done due to the severe over-aggressive bone removal during the bunion surgery. Ultrasound done does not reveal an [sic] tendonopathies in the EDL tendon.
>
> Three months later, Dr. Berkey indicated the following in Ms. Cannon's chart:
>
> Xrays reveal aggressive bone resection 1st met. head and neck left foot. The left foot xrays resembles the right foot xray.
>
> On October 8, 2007, Dr. Berkey added the following comment into Ms. Cannon's chart:
>
> I spoke with Dr. Scott Ashton on 10/5/2007. We discussed Brandy Cannon. He

told me he had treated her prior to the surgery for a stress fracture due to short first metatarsal. A short first metatarsal causes an excess loading force on the lesser metatarsals and the mdifoot [sic] causing stress fractures. Dr. Ashton said the [sic] I did not see the pre-op xrays which showed the short first metatarsal. Based on this new information, in my opinion, the stress fracture(s) that Brandy Cannon experienced were due to the short first metatarsal (which was present prior to the bunionectomy) and not to the narrowed first metatarsal head as noted on the x-rays I took in my office.

The Cannons submitted the foregoing evidence to the trial court in their motion for the protective order. Based on this evidence, the Cannons argued that Dr. Ashton must have communicated with Dr. Berkey prior to Dr. Berkey's October 8, 2007 note, particularly in light of the fact that the note was made "***approximately one month after suit*** [against Dr. Ashton] ***was filed***." [Emphasis in orig.].

The record shows that after the protective order was entered, Mr. Werley indeed contacted Dr. Singleton, Ms. Cannon's then current doctor, as well as Dr. Cook, Dr. Crates, and Dr. Berkey, all doctors who had treated Ms. Cannon previously. Mr. Werley sent each of these individuals a letter on September 11, 2008, along with a packet of information containing medical records, affidavits from witnesses, pleadings, and other correspondence. The September 11 letter states in part:

> I have requested depositions for each of you. The Court has entered an order that I cannot contact you without the presence of Plaintiffs' counsel. As a result, I cannot visit with you, and ask beforehand, what you are willing to do or what your testimony will be to certain questions.
>
> So, stepping out in faith, I am sending you this package. It contains Dr. Ashton's medical records, some x-rays, and the expert report of his alleged negligence. I request that you read same and be able to respond to the allegations of negligence. I will bring the original x-rays to the deposition.

At the sanctions hearing, Mr. Werley testified he had instructed his secretary to send a

copy of this letter and packet to the plaintiffs, but the Cannons' attorneys testified they never received the information and they did not know about its existence until they deposed Ms. Cannon's previous doctors. The Cannons' attorneys also testified that every other correspondence from Mr. Werley's office that had been sent to the doctors involved in this case had been "cc'd" to them, but only Dr. Ashton was "cc'd" in the September 11 letter and its attachments. At the end of the sanctions hearing, the trial court determined the September 11 letter and its attached packet were "completely out of bounds," and the court did not believe Mr. Werley's representations that he had served these documents on the Cannons. The court further stated that it was "seriously bothered by [the defense's] flagrant . . . disobedience" of its order. In the order regarding the Cannons' motions for sanctions, the court made the following findings:

> The Court FINDS that there is a direct relationship between the sanction and the offensive conduct of Defendants.
>
> The Court FURTHER FINDS that adequate evidence was heard at the Hearing demonstrating that the attorneys' fees and costs' award was reasonable.
>
> The Court FURTHER FINDS that this sanction is no more severe than necessary to promote full compliance of the earlier ORDER of this court concerning *Ex Parte* communications by Defendants and Defendants' agents with Plaintiff Brandy Cannon's treating physicians.
>
> The Court FURTHER FINDS that there is good cause to support the imposition of sanctions because evidence was presented to the Court that Defendants' counsel sent inappropriate *Ex Parte* communications to Plaintiff Brandy Cannon's treating physicians: Dr. Steven Berkey, Dr. Charles Ed Singleton, Dr. Charles Cook and Dr. John Crates.

We reject Mr. Werley's suggestion that the sanction was inappropriate because the trial court only found for the Cannons on one of the allegations in their sanctions motions. Rule 215

authorizes the trial court to impose sanctions for abusing a discovery order. In this case, the trial court found for the Cannons on their motions for sanctions based on the defense's violation of the protective order. Thus, it had the authority to impose sanctions under Rule 215. Mr. Werley also does not succeed in arguing that none of the doctors he contacted were "non-party treating physicians," as stipulated by the protective order. The record shows that the parties had a clear understanding at the protective order hearing that "it was obviously going to be necessary to contact some of [Ms. Cannon's] doctors to request conferences or depositions, to obtain their records; and that . . . as long as copies of those communications were provided to opposing counsel, that that was not going to be a violation of the order." Because of this explicit understanding at the protective order hearing, we conclude that Mr. Werley's argument based on semantical distinctions between a "past" and "current" doctor fail.[2]

Based on our review of the record, we conclude that the monetary sanction imposed by the trial court against Mr. Werley has a direct relationship to his improper conduct. Accordingly, the first part of the determination regarding whether the sanction against Mr. Werley was just is satisfied. *See Am. Flood Research*, 192 S.W.3d at 583.

Next, we examine whether the $12,660 monetary sanction against Mr. Werley was excessive. The evidence showed that Mr. Werley sent the September 11 letter and the attached packet to four doctors who had treated or were currently treating Ms. Cannon without sending the same to the Cannons or their attorneys. This clearly violated the protective order. Before

---

[2] On appeal, Mr. Werley also complains that Doctors Singleton and Berkey were "podiatrists" and not "physicians" as defined in the Texas Occupations Code, and thus his September 11 communications with them were not subject to the protective order. However, Mr. Werley did not raise these objections with the trial court, and thus failed to preserve error for appellate review. *See* TEX.R.APP.P. 33.1(a).

arriving at the $12,660 sanction amount, the trial court heard Ms. McLarty, counsel for the Cannons, testify at the sanctions hearing that her co-counsel spent 25 hours and she spent 7 hours in the sanctions matter at a rate of $350 per hour, and that her legal assistant spent 14 hours at a rate of $75 per hour. Adding $500 in other costs, such as copies of exhibits and DVDs, the total cost came to $12,660. At the end of the sanctions hearing, the court awarded the entire $12,660 amount as a sanction against Mr. Werley based on Ms. McLarty's testimony. After the hearing, but before the trial court signed and entered the order reflecting its ruling, the defendants filed their response to the plaintiffs' supplement to their consolidated motions for sanctions, in which the defendants requested that the trial court reduce the sanction to $4,220. Nevertheless, the trial court granted the entire $12,660 monetary sanction.

On appeal, Mr. Werley contends the trial court did not consider "less stringent sanctions," that it did not require the plaintiffs to segregate the attorneys' fees awarded as a sanction against him, and that no evidence or affidavits were submitted regarding the attorneys' fees. Because Mr. Werley did not raise these objections with the trial court at the sanctions hearing, we conclude he failed to preserve error for appellate review. *See* TEX.R.APP.P. 33.1(a). However, in the defendants' response to to the plaintiffs' supplement to their consolidated motions for sanctions, Mr. Werley did argue that the sanction against him should be reduced to $4,220 on the basis that the court "threw out two out of the three parts of [the plaintiffs' motions for sanctions]." Even if Mr. Werley timely preserved error with respect to his objection that the court failed to consider less severe sanctions by making the foregoing argument in the response, we determine his argument for a $4,220 sanction was conclusory and lacked any support. In light of the evidence, the $12,660 sanction was not excessive in this case, but reasonable considering

the fact that Mr. Werley's misconduct forced the Cannons' attorneys to prepare and file motions for sanctions and to attend a hearing for sanctions.[3] *See, e.g., Stromberger v. Turley Law Firm*, 315 S.W.3d 921, 924 (Tex.App.--Dallas 2010, no pet.)(upholding sanctions of $5,300 on a judgment debtor for his failure to appear for his scheduled deposition or produce any documents pursuant to a subpoena duces tecum, based on 26.5 hours the creditor's attorney spent on preparing the sanctions motion with a voluminous file).  We conclude that the sanction against Mr. Werley was just, and the trial court did not abuse its discretion in awarding it or in entering the sanctions order.

Mr. Werley also attempts to argue that the trial court erred in entering the final judgment because it was based on the sanctions order.  Having determined the trial court did not err in entering the sanctions order, we conclude the court did not err in entering the final judgment to the extent of the sanction awarded.  Accordingly, we overrule Issue One.

In Issue Two, Mr. Werley argues the trial court abused its discretion in awarding appellate attorneys' fees in the final judgment.  He argues that because the underlying protective order was in itself an abuse of discretion, any appellate fees awarded pursuant to it was unjust. He contends the awarded fees were in the same amount as stated in Mr. Kirk Pittard's affidavit, which was not introduced into evidence, and which constituted hearsay and was conclusory. Mr. Werley also cites case law holding that "appellate fees must fail as the award must be conditioned upon a specified party being unsuccessful in the appeal."  The trial court in the final judgment awarded $15,000 in appellate attorneys' fees "in the event [Mr. Werley's] case is

---

[3] The $12,660 sanction amount did not take into account the time the plaintiffs' attorneys spent at the sanctions hearing.

appealed unsuccessfully to the Dallas Court of Appeals," and in the amount of $7,500 "in the event this case is appealed unsuccessfully to the Supreme Court of Texas."

We review the trial court's award of appellate attorneys' fees for an abuse of discretion. *See, e.g., Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 493 (Tex.App.--Dallas 2005, no pet.). A trial court's award of attorney's fees may include appellate attorney's fees, but there must be evidence of the fees' reasonableness pertaining to appellate work. *State and County Mut. Fire Ins. Co. ex rel. Southern United General Agency of Texas v. Walker*, 228 S.W.3d 404, 410 (Tex.App.--Fort Worth 2007, no pet.). Moreover, the trial court may not grant a party an unconditional award of appellate attorney's fees because to do so could penalize a party for taking a meritorious appeal. *In re Ford Motor Co.*, 988 S.W.2d at 721; *Texas Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 401 (Tex.App.--Dallas 2000, pet. denied). Here, the trial court's final judgment properly made the awards of appellate attorneys' fees conditional on Mr. Werley's unsuccessful appeals.

Mr. Werley's assertion that the plaintiffs did not introduce Mr. Pittard's affidavit into evidence fails beacause the record shows the affidavit was attached as an exhibit to the Cannons' April 15, 2009 motion for entry of judgment. Mr. Werley's complaint that Mr. Pittard's affidavit constituted hearsay is waived because he failed to obtain a ruling on this objection at trial. *See Methodist Hospitals of Dallas v. Amerigroup Texas, Inc.*, 231 S.W.3d 483, 492 (Tex.App.-- Dallas 2007, pet. denied)(when a party makes a hearsay objection but fails to obtain a ruling, his right to challenge the evidence on appeal is waived). However, an objection that an affidavit is conclusory is an objection to the affidavit's substance, and may be raised for the first time on appeal. *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 301 (Tex.App.--Dallas 2009, no pet.). In

*Texas Commerce Bank, Nat. Ass'n v. New*, the Texas Supreme Court held that affidavit testimony in support of attorneys' fees was not conclusory and was legally sufficient where the attorney testified he was a duly licensed attorney, familiar with usual and customary attorneys' fees in the area, and that based on his knowledge of the services rendered, the disputed fee was reasonable. *Texas Commerce Bank, Nat. Ass'n v. New*, 3 S.W.3d 515, 517-518 (Tex. 1999). Similarly here, in Mr. Pittard's affidavit in support of the appellate attorneys' fees, he testified he was a currently licensed Texas attorney in good standing with the State Bar of Texas, and that he was "familiar with the standards for calculating reasonable and necessary attorney's fees in Texas." He provided testimony as to his co-counsel's and his own hourly rates, which according to his training and experience, were "reasonable for litigation work in Dallas County by attorneys with these respective levels of experience and expertise." Based on his experience, he also testified as to the necessary time to prepare an appeal to the court of appeals and the Texas Supreme Court. Mr. Pittard stated the disputed appellate fees were reasonable and necessary. This affidavit was not conclusory. *See New*, 3 S.W.3d at 517-518.

Finally, we concluded in Issue One that we cannot determine whether the trial court erred in granting the protective order in Cause No. 07-10336 in this appeal. Therefore, we need not address Mr. Werley's complaint that the appellate fees awarded were unjust because they were based on the trial court's erroneous granting of the protective order. Accordingly, we conclude the trial court did not abuse its discretion in its award of appellate attorneys' fees in the final judgment, and we overrule Issue Two.

Having overruled Mr. Werley's issues presented for review, we affirm the trial court's judgment.

June 8, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.