

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00172-CV

———————————————

SUNBELT RENTALS, INC., Appellant

V.

W.O.E. CONSTRUCTION, INC. F/K/A WASHED OUT ENTERPRISES, INC.
AND CALEB CHALMERS, Appellees

———————————————

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-317068-20

———————————————

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

After two partial summary judgments and a nonsuit order, the trial court assessed attorney's fees and expenses against Appellant Sunbelt Rentals, Inc. as a discovery-related sanction. *See* Tex. R. Civ. P. 191.3, 215. Sunbelt contends that the sanctions order was void because it was entered 12 days after the trial court's plenary power ostensibly expired and, alternatively, that the trial court abused its discretion in ordering sanctions. We will affirm.

### Background

In January 2008, Appellee W.O.E. Construction, Inc. f/k/a Washed Out Enterprises, Inc. executed a credit application with Sunbelt that enabled W.O.E. to lease equipment from Sunbelt on credit. Appellee Caleb Chalmers, W.O.E.'s president, signed the application on the company's behalf and personally guaranteed it.

W.O.E. rented a street sweeper from Sunbelt in September 2018. In late May 2019, a W.O.E. employee ran over a coworker with it, killing him. Roughly a week later, on June 4, Sunbelt took possession of the sweeper and in this lawsuit claimed that W.O.E. was obliged to (but did not) pay some $60,000 in rental fees that had accumulated before the agreement ended by its own terms in December 2019.

Sunbelt sued W.O.E. and Chalmers[1] for "breach of contract/breach of personal guaranty" and for quantum meruit and sued W.O.E. for failing to defend, indemnify, and hold harmless Sunbelt as the rental agreement required. In addition to damages, Sunbelt prayed for attorney's fees, pre- and postjudgment interest, and court costs.

Through two partial-summary-judgment motions, W.O.E. obtained judgment as a matter of law on Sunbelt's claims. First, on November 29, 2022, the trial court signed an order granting the first partial-summary-judgment motion and decreeing that Sunbelt take nothing on its "breach of contract/breach of personal guaranty and quantum meruit claims to the extent those claims seek rental fees from [W.O.E.] based on any time after June 4, 2019." A few months later, on March 30, 2023, the trial court granted the second partial-summary-judgment motion and ordered that Sunbelt take nothing on its claims that W.O.E. must defend, indemnify, and hold Sunbelt harmless. Also on March 30, the trial court entered an order denying a partial-summary-judgment motion that Sunbelt had filed.

Shortly before the trial court signed the second summary-judgment order, W.O.E. filed an amended sanctions motion, seeking death-penalty sanctions,

---

[1]We will refer to W.O.E. and Chalmers collectively as "W.O.E."

attorney's fees and costs, and monetary sanctions against Sunbelt for bad-faith litigation tactics.[2] That amended motion was set for a May 18, 2023 hearing.

While the sanctions motion was pending, on April 17, 2023, Sunbelt filed a notice of "nonsuit without prejudice with respect to [Sunbelt's] claims and causes of action for rentals, if any, that were not disposed of by" the first summary-judgment order of November 29, 2022. On April 18, 2023, the trial court signed an order reflecting that Sunbelt had nonsuited those claims without prejudice. Like all preceding orders in this case, the nonsuit order had no finality language to indicate that all parties and pending claims were thereby disposed of and that the order was appealable, nor did it mention the extant sanctions motion.

On May 17, 2023, Sunbelt filed a notice of appeal stating that it was appealing from the trial court's "final order on Plaintiff's Partial Motion for Summary Judgment, signed on March 17, 2023."[3]

---

[2]The trial court had earlier denied W.O.E.'s initial sanctions motion.

[3]No summary-judgment order was actually signed on March 17, 2023, but both the second summary-judgment order and the order denying Sunbelt's own partial-summary-judgment motion state that the respective motions were considered on that date. It's not clear why Sunbelt's notice of appeal referred to a "final order" on "*Plaintiff's*" (Sunbelt's) motion for partial summary judgment, since denials of summary-judgment motions are not ordinarily appealable. *See Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 59 (Tex. 2011) ("The denial of summary judgment is an interlocutory order over which an appellate court typically lacks jurisdiction absent some special statutory grant.").

The trial court held an evidentiary hearing on the amended sanctions motion on May 18, 2023, 30 days from the nonsuit order and the date on which the parties assumed that the trial court's plenary power would expire without a postjudgment motion extending it. *See* Tex. R. Civ. P. 329b. At the hearing's conclusion, the trial court said that it would deny the requests for death-penalty and monetary sanctions of $25 million but that it would grant the request that Sunbelt pay all W.O.E.'s attorney's fees and costs as sanctions.[4] The trial court signed an order reflecting these rulings 12 days later, on May 30, 2023.

In its appellate briefing, and unlike what its notice of appeal said, Sunbelt does not attack any summary-judgment rulings but complains only about the sanctions order.

## Discussion

### A. The April 18 nonsuit order was not a final one; rather, the May 30 sanctions order was the last component of a final, appealable judgment.

Sunbelt's first issue—that the May 30 sanctions order is void because plenary power expired on May 18—posits that the April 18 nonsuit order fully disposed of all parties and claims and was final and appealable.[5] *See Lehmann v. Har-Con Corp.*,

---

[4]Based on our disposition of Sunbelt's second issue, we need not recite the evidence elicited at the hearing about Sunbelt's litigation conduct.

[5]W.O.E.'s briefing accepts this faulty notion, arguing instead that Sunbelt's notice of appeal failed to invoke our jurisdiction to consider the stand-alone sanctions order or, alternatively, that the trial court's oral pronouncement on May 18, 2023—in

39 S.W.3d 191, 205 (Tex. 2001) ("[W]hen there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties."). But Sunbelt—and W.O.E.—are incorrect.

---

fact not the last day of plenary power, as we explain—was timely and controls over the later written order that was "merely an administrative act."

At the sanctions hearing, the trial court stated that May 18 "seem[ed] to be the last day of this Court's plenary power" but that it "[had] not done any research on" the outstanding sanctions issue's effect on its plenary power. W.O.E.'s counsel stated that, also without having researched it, he was "fine" with the trial court's "proceeding under that assumption." Sunbelt's counsel stated, "Candidly, I don't know about a sanctions motion. I don't know whether that would be separate. I haven't looked at the issue." We assume that the trial court later realized that its April 18 nonsuit order had *not* fully disposed of all parties and claims, so it was comfortable waiting to sign the sanctions order—the last-placed piece in the finality puzzle.

Whatever the explanation, the parties' respective positions on appeal are offtrack, including W.O.E.'s assertion that sanctions were orally rendered on May 18. *See, e.g.*, *State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015) ("A trial court renders judgment orally when it announces rendition as a present act and not as an intention to render judgment in the future." (cleaned up)). Here, the trial court stated that it was "*going to* grant" attorney's fees as a discovery sanction against Sunbelt, a forward-looking statement, and asked W.O.E.'s counsel to prepare an order, which it signed on May 30. *See James v. Hubbard*, 21 S.W.3d 558, 561–62 (Tex. App.—San Antonio 2000, no pet.) (holding that trial court's statement that it was "going to grant the divorce in this case" did not "express a present intent to render judgment"; moreover, later written judgment expressing that judgment had been orally rendered at the hearing "is not dispositive"); *Able Cabling Servs. v. Aaron-Carter Elec., Inc.*, 16 S.W.3d 98, 100–01 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (holding that court's statement that "judgment *will be* rendered in accordance with the terms dictated into the record" did not indicate a present intent to render judgment).

In viewing the April 18 order as the final judgment, Sunbelt relies on authorities that are either inapposite or predate the Texas Supreme Court's decisions in *Unifund CCR Partners v. Villa*, 299 S.W.3d 92 (Tex. 2009), and *Crites v. Collins*, 284 S.W.3d 839 (Tex. 2009)—decisions that, building upon *Lehmann*, unquestionably yield the opposite conclusion.[6]

In the first of those two cases, the supreme court dealt with a nonsuit order that was entered while the defendant's sanctions motion was pending. *Crites*, 284 S.W.3d at 840. About a month after the nonsuit order, the trial court denied the defendant's sanctions motion; the defendant's notice of appeal came within 30 days of that denial order but more than 30 days after the nonsuit. *Id.* Raising the issue of its jurisdiction sua sponte, the supreme court considered "whether the order of nonsuit or the order denying sanctions triggered the thirty[-]day filing period." *Id.*

In holding that it was the latter, the supreme court noted that the nonsuit order had no finality language and did not mention the outstanding sanctions motion:

> Because the order of nonsuit itself does not unequivocally express an intent for the order to be a final and appealable order, and because it does not address all pending claims, the order was not final. Only when the trial court issued its second order denying sanctions was a final order entered, and only at that point did the case become appealable.

[6]Neither party cited any of these cases, leaving it to us to locate and apply those outcome-determinative opinions. *Cf.* Standards for Appellate Conduct, *Lawyers' Duties to Court* ¶ 4, Texas Rules of Court (State) 324–25 (West 2023) ("Counsel will advise the Court of controlling legal authorities, including those adverse to their position, and should not cite authority that has been reversed, overruled, or restricted without informing the court of those limitations.") (*available at* http://www.txcourts.gov/media/1437423/standards-for-appellate-conduct.pdf).

*Id.* at 841 (citing *Lehmann*, 39 S.W.3d at 200, and *Villafani v. Trejo*, 251 S.W.3d 466, 468 (Tex. 2008) (holding that "the trial court's denial of Villafani's motion for sanctions and dismissal and Trejo's nonsuit collectively disposed of all the claims between the two parties")).

*Unifund* followed several months later. There, Unifund argued that a sanctions order entered against it was void "because the trial court's plenary power [had] expired before it signed the order nine months after the order dismissing Unifund's suit." 299 S.W.3d at 95. After reciting the familiar principle that "[t]he expiration date for a trial court's plenary power is calculated from the date the court enters a final order disposing of all the claims and parties," *id.*, the supreme court explained why Unifund was wrong to say that the plenary-power clock had started ticking with the earlier order, *see id.* at 95–97.

First, unlike those of Unifund's cited cases in which a sanctions motion was filed *after* a judgment dismissing the case—most notably, *Lane Bank Equipment Co. v. Smith Southern Equipment, Inc.*, 10 S.W.3d 308, 310, 312 (Tex. 2000), and *Scott & White Memorial Hospital v. Schexnider*, 940 S.W.2d 594, 596 n.2 (Tex. 1996)—Villa's sanctions motion was pending when Unifund moved to dismiss its case against him. *Unifund*, 299 S.W.3d at 96. Because the dismissal order did not specifically refer to the sanctions motion, "the order did not necessarily dispose of Villa's motion." *Id.* (citing Tex. R. Civ. P. 162 (stating that dismissal based on a nonsuit "shall have no effect on any motion for sanctions")); *see Crites*, 284 S.W.3d at 840 ("A judgment dismissing all

8

of a plaintiff's claims against a defendant, such as an order of nonsuit, does not necessarily dispose of any cross-actions, such as a motion for sanctions, unless specifically stated within the order."); *see also Youboty v. Youboty*, No. 14-20-00557-CV, 2022 WL 1548535, at *3 (Tex. App.—Houston [14th Dist.] May 17, 2022, no pet.) (mem. op.) (holding nonsuit order, entered while sanctions motion was pending, did not affect plenary power where "the trial court did not dispose of all claims and parties in the case or state with unmistakable clarity that the court was rendering a final judgment"); *Walter v. Teller*, No. 02-12-00028-CV, 2013 WL 5966351, at *2 (Tex. App.—Fort Worth Nov. 7, 2013, no pet.) (mem. op. on reh'g) (rejecting argument that sanction order was void because it was signed more than seven months after a nonsuit order that "did not specifically reference [Wife's] motion for sanctions or otherwise unequivocally express any intent to dispose of the motion; therefore, the order was not a final order that disposed of the motion for sanctions").

Second, although a dismissal or nonsuit order *can* be final even when a sanctions motion is pending and unremarked upon in the order—thus setting the plenary-power timetable—that order must be unequivocal in its intent to be final. *Unifund*, 299 S.W.3d at 96 (citing *Crites*, 284 S.W.3d at 840–43). The *Unifund* nonsuit order manifestly did not purport to be final, as the supreme court explained. "The dismissal order was entitled 'ORDER OF DISMISSAL,' stated 'the above styled and numbered cause be and it is hereby dismissed with prejudice,' and did not specifically address Villa's pending motion for sanctions." *Id.* at 96–97. Because it was "apparent"

9

from its language that this dismissal order was "not intended to be, and was not, a final order disposing of all pending matters and thus appealable," plenary power had not expired before the trial court entered the sanctions order nine months later. *Id.* at 97. As a result, "[t]he sanctions order was not void." *Id.*

Just so here. Similar to the *Unifund* dismissal order, the trial court's "Order of Nonsuit Without Prejudice" decreed that "[Sunbelt's] claims and causes of action for rentals, if any, that were not disposed of by [the court's November 29, 2022 partial-summary-judgment order] . . . are hereby nonsuited without prejudice." That order said nothing about the pending sanctions motion. Nor did the order contain any recognized finality language such as "This judgment finally disposes of all parties and all claims and is appealable." *Lehmann*, 39 S.W.3d at 206. The trial court thus possessed plenary power on May 30, 2023; that was the date on which all theretofore interlocutory orders were merged into one final judgment, because only then did no parties or claims remain unaddressed. As a result, that order was not void as outside the trial court's plenary power, and we overrule Sunbelt's first issue.

This case does present a twist in that Sunbelt's notice of appeal was early—that is, because the May 30 final order triggered the appellate timetables, Sunbelt did not have to file its notice of appeal on May 17. *See* Tex. R. App. P. 26.1 (providing that with certain exceptions, notice of appeal must be filed within 30 days after judgment signed). Rule 27.1(a) of our appellate-procedure rules provides that "a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event

10

that begins the period for perfecting the appeal." Tex. R. App. P. 27.1(a); *see In re J.M.*, 396 S.W.3d 528, 530 (Tex. 2013).

We interpret the appellate rules "liberally in favor of preserving appellate rights." *Higgins v. Randall Cnty. Sheriff's Off.*, 257 S.W.3d 684, 688 (Tex. 2008). The supreme court has "repeatedly held that the right of appeal should not be lost due to procedural technicalities." *Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 924 (Tex. 2011). Before May 30, 2023, although we could have dismissed Sunbelt's appeal because, technically, it was from an unappealable—not simply nonfinal—interlocutory order, we did not. But once the trial court rendered a final appealable order, all preceding interlocutory orders were merged into it, and at that point Sunbelt's premature notice of appeal was deemed filed. *See Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020) (citing *Roccaforte*, 341 S.W.3d at 924).

As to its contents' sufficiency under Rule 25.1(d), however, a far closer question exists. *See* Tex. R. App. P. 25.1(d) (detailing what a notice of appeal must contain). Sunbelt sought to appeal from the "final order on Plaintiff's Partial Motion for Summary Judgment" (a nonfinal and unquestionably unappealable denial of summary judgment) "signed on March 17, 2023" (an incorrect date). Problems abound, but W.O.E. argues only that the sanctions order was a "separate, stand-alone judgment" that Sunbelt was obliged to, but did not, separately appeal, such that Sunbelt never invoked our jurisdiction, a position we rejected above.

11

Despite the self-evident shortcomings of Sunbelt's notice of appeal, in the interest of justice we will construe it as sufficiently invoking our jurisdiction to resolve Sunbelt's appellate complaint about the sanctions order.[7] A recent case from our sister court in Houston summarizes why:

> The supreme court advocates for a policy that "appl[ies] rules of procedure liberally to reach the merits of the appeal whenever possible." *Warwick Towers Council of Co-Owners v. Park Warwick, L.P.*, 244 S.W.3d 838, 839 (Tex. 2008) (per curiam).
>
> Applying this precept, this court also takes a liberal approach when evaluating alleged errors in notices of appeal. *See, e.g.*, *Human Biostar, Inc. v. Celltex Therapeutics Corp.*, 514 S.W.3d 844, 846 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (rejecting the appellee's argument that the court lacked jurisdiction because appellants' notices of appeal listed the wrong order); *Lackshin v. Spofford*, No. 14-03-00977-CV, 2004 WL 1965636, at *2 (Tex. App.—Houston [14th Dist.] Sept. 7, 2004, pet. denied) (mem. op.) (notice of appeal was not defective despite listing incorrect date for final judgment); *Griggs v. Wood*, No. 14-00-00226-CV, 2001 WL 987906, at *1 n.1 (Tex. App.—Houston [14th Dist.] Aug. 30, 2001, no pet.) (not designated for publication) (declining to dismiss notice of appeal because it did not state the date of the judgment or the order appealed from).

*Wolfe's Carpet, Tile & Remodeling, LLC v. Bourelle*, No. 14-22-00579-CV, 2023 WL 4770069, at *2 (Tex. App.—Houston [14th Dist.] July 27, 2023, no pet.). We thus proceed to Sunbelt's second issue, the propriety of the trial court's awarding W.O.E. its attorney's fees and costs as sanctions for Sunbelt's litigation conduct.

---

[7]Future litigants should not rely on our relative lenience here as license to be less than punctilious in perfecting appeals.

**B. Sunbelt did not preserve the sanctions complaint it briefed, but even so, the trial court did not abuse its discretion.**

At the outset, we note that Sunbelt's discussion of its second issue does not match its framing. Sunbelt presented this issue as "[w]hether [W.O.E.'s] motion for sanctions against [Sunbelt] satisfies the Court's requirements for imposing sanctions of the nature requested, when [W.O.E.] presents no evidence of intentional bad faith by [Sunbelt] or counsel." But its argument rests entirely on a claim that W.O.E. failed to segregate its attorney's fees.[8] We hold that any evidentiary-sufficiency complaint has been waived by Sunbelt's failure to provide argument with appropriate citations to authorities and to the record to support any such contention and will limit our review to Sunbelt's segregation argument. *See Petras v. Criswell*, 248 S.W.3d 471, 475 n.1 (Tex. App.—Dallas 2008, no pet.); *see also Schulze v. Cap Collection JV7*, No. 03-03-00390-CV, 2004 WL 2108730, at *3 n.4 (Tex. App.—Austin Sept. 23, 2004, no pet.) (mem. op.) ("Schulze reported his 'Issues Presented' differently than he argued them in the body of his brief. We will address them as actually argued.").

_____

[8]For unexplained reasons, Sunbelt casts its issue-two argument in terms of an equitable and just fee recovery under the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. It also relies on inapposite caselaw concerning a party's obligation to segregate recoverable attorney's fees allowed by statute or contract from nonrecoverable ones, citing *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017), and *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310, 314 (Tex. 2006). Neither case involved an attorney's-fee award as a sanction for discovery abuse, and the case before us has no declaratory-judgment requests in it. We take it that Sunbelt complains that the trial court did not limit its attorney's-fees award to amounts that W.O.E. incurred in pursuing sanctions, rather than the entirety of W.O.E.'s attorney's fees.

13

The trial court awarded W.O.E. the entirety of its attorney's fees ($48,189.77) and costs ($612.77) as sanctions "in accordance with Texas Rule of Civil Procedure 191, Texas Rule of Civil Procedure 215, and/or the Court's inherent power to impose sanctions." The trial court declined W.O.E.'s invitation to also sanction Sunbelt $25 million dollars for its litigation conduct and the "flagrant bad faith" and "callous disregard" for its discovery obligations that the trial court found.

W.O.E.'s amended sanctions motion requested, among other things, an order that "Sunbelt pay all W.O.E.'s attorney's fees and expenses in defending against Sunbelt's claims and pursuing these sanctions." At the May 18 hearing, for the first time, W.O.E. provided Sunbelt with copies of its attorney's-fees invoices. Although Sunbelt had apparently indicated beforehand, off the record, that it would object to attorney's-fees evidence, its counsel stated that

> [W.O.E.'s counsel] did hand me a stack of bills during the break, and so *I may still assert my objection*, but, I mean, I'm certainly prepared to at least ask a few questions of [W.O.E.'s counsel], and I think in the purpose of everything, I certainly don't want to stop a train with respect to -- to getting that information out there. [Emphasis added.]

W.O.E.'s counsel then testified in narrative form and offered the billing records into evidence. The trial court asked if there were any objections to those exhibits; Sunbelt said no.

In cross-examining W.O.E.'s counsel, Sunbelt asked about any attempts to segregate fees relating to "any of the alleged discovery abuse versus the amounts that [counsel] billed in this lawsuit." W.O.E.'s counsel explained that he had "looked to

14

try" but "didn't find it to be feasible," referring back to his narrative testimony on direct that carving out only those fees relating to the sanctions motion was "difficult because the whole Motion for Sanctions and the Amended Motion for Sanctions all stem from the original conduct in this case to begin with."[9] The following colloquy occurred about possible segregation:

> Q. What are the costs associated with the motion – the original Motion for Sanctions?
>
> A. *I have to go back and look* and pull them up.
>
> Q. Okay. As we're sitting here right now -- I don't want to waste anymore of the Court's time, but you can't tell us that number, can you?
>
> A. Well, there was a lot of work that went into the motion. First of all, again, it's hard to segregate that. That's part of the point. There were -- there were years of discovery issues and discovery problems associated with the case, and then ultimately you have to do the research, the analysis, the writing, pull it together. We've already had one hearing. *So I can go back and break down that number for you* but I mean we --
>
> Q. As we sit here right now though, [W.O.E.'s counsel], you cannot give us the number associated with preparing, filing the initial -- original Motion for Sanctions, can you?
>
> A. No. It's all contained in [the two billing-records exhibits].
>
> Q. Okay. Likewise, you can't tell us the amounts involved with respect to the amounts associated with the Amended Motion for Sanctions, can you?

---

[9]In its closing remarks, W.O.E. recapped that it was "seeking sanctions based on all the sanctionable conduct that has occurred. We have false statements, untrue testimony, manufacturing evidence, spoliation of a key document and relying on false contract documents."

A. *I could if we wanted to take the time to go through it*. It's all contained in Exhibits 1 and 2. [Emphases added.]

Sunbelt never objected to the lack of segregation, asked that W.O.E.'s counsel do what he said was possible, or moved for a continuance. Later in the hearing, Sunbelt argued simply that "Under Rohrmoos Ventures,[10] they have the burden to segregate which fees are potentially related and which ones aren't. They haven't done that." At the hearing's end, Sunbelt did not object when the trial court announced its ruling awarding all undifferentiated fees and costs shown in the billing records and did not move for reconsideration or for a new trial after the trial court later reduced its ruling to writing.

Although W.O.E. has not raised the issue, "[p]reservation of error is a systemic requirement on appeal," and "a court of appeals should review preservation of error on its own motion." *Osman v. City of Fort Worth*, No. 02-21-00117-CV,

---

[10]*Rohrmoos Venture* did not involve fee segregation but instead clarified the legal and evidentiary standards for establishing reasonable attorney's fees in a fee-shifting situation. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 492 (Tex. 2019). The supreme court later extended *Rohrmoos Venture* to the sanctions context, holding that "[b]efore a court may exercise its discretion to shift attorney's fees as a sanction, there must be some evidence of reasonableness because without such proof a trial court cannot determine that the sanction is 'no more severe than necessary' to fairly compensate the prevailing party." *Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707, 709 (Tex. 2019) (quoting *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 480 (Tex. 2008)). The *Nath* court remanded the attorney's-fees issue because the only evidence of reasonableness came in the form of counsel's conclusory affidavits; billing records were not introduced. *See id.* at 710. Here, of course, W.O.E.'s counsel not only testified but put into evidence, without objection, all the billing records.

2022 WL 187984, at *5 n.9 (Tex. App.—Fort Worth Jan. 20, 2022, pet. denied) (mem. op.) (quoting *Knoderer v. State Farm Lloyds*, 515 S.W.3d 21, 44 (Tex. App.—Texarkana 2017, pet. denied)); *see Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 604 (Tex. 2012) ("When a party fails to preserve error in the trial court . . . an appellate court may not consider the unpreserved or waived issue."); *cf. Mitchell v. Wilmington Sav. Funds Soc'y, FSB*, No. 02-18-00089-CV, 2019 WL 150262, at *4 (Tex. App.—Fort Worth Jan. 10, 2019, no pet.) (mem. op.) ("[B]efore we consider whether an abuse of discretion has occurred, the error must be preserved for our review.").

Error preservation generally requires that a party present its complaint to the trial court by timely request, objection, or motion with sufficient specificity to make the trial court aware of the complaint. *See* Tex. R. App. P. 33.1(a); *Daniels v. Daniels*, No. 02-19-00387-CV, 2021 WL 832648, at *2 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (mem. op.). If the party fails to do this, the complaint is waived on appeal, and "[c]omplaints regarding alleged error in awarding attorney's fees are subject to this rule." *Daniels*, 2021 WL 832648, at *2 (quoting *Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *8 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.)).

"[I]f no objection is made to a failure to segregate attorney's fees . . . at the time evidence of attorney's fees is presented . . . , the error is waived." *Fire Ins. Exch. v. Kennedy*, No. 02-11-00437-CV, 2013 WL 441088, at *5 (Tex. App.—Fort Worth Jan. 31, 2013, pet. denied) (mem. op.); *see also Am. Homeowners Pres. Fund v. Pirkle*,

17

475 S.W.3d 507, 529 & n.29 (Tex. App.—Fort Worth 2015, pet. denied). "In a bench trial, the objection that attorney's fees are not segregated as to specific claims must be raised before the trial court issues its ruling." *Huey-You v. Huey-You*, No. 02-16-00332-CV, 2017 WL 4053943, at *2 (Tex. App.—Fort Worth Sept. 14, 2017, no pet.) (mem. op.) (citing Rule 33.1(a)(1) and holding that because appellant did not object based on a failure to segregate before the trial court issued its ruling, any error was waived); *see also Spriggs v. Gonzales*, No. 07-16-00418-CV, 2018 WL 3193746, at *10 (Tex. App.—Amarillo June 28, 2018, pet. denied) (mem. op.) (noting that even if appellants had no opportunity to object and obtain a ruling at the sua sponte Rule 13 sanctions hearing sprung on them by the trial court, they could have preserved their sanctions-related complaint with a motion for rehearing or motion for new trial specifying their complaints). This principle applies as well to attorney's fees awarded as sanctions. *Werley v. Cannon*, 344 S.W.3d 527, 535 (Tex. App.—El Paso 2011, no pet.) (failing to object that trial court did not require plaintiffs to segregate attorney's fees awarded as sanction waived complaint on appeal). We do not consider Sunbelt's passing reference to *Rohrmoos Venture* to cut the error-preservation mustard and thus overrule its second issue.

But even if Sunbelt preserved its failure-to-segregate complaint, the trial court did not abuse its discretion in awarding W.O.E. all its attorney's fees.

We review a trial court's decision on sanctions for a clear abuse of discretion. *Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 884 (Tex. 2017)

18

(citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)). The test is not whether, in our opinion, the trial court acted appropriately on the facts presented but "whether the court acted without reference to any guiding rules and principles." *Cire*, 134 S.W.3d at 838–39 (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)). We will reverse only if the ruling was arbitrary or unreasonable. *Id.* at 839. Sanctions awarded must be "just." *TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding).

Sunbelt does not challenge the evidence underpinning the trial court's findings that, upon considering Sunbelt's conduct "during the entirety of this litigation," (1) the offensive conduct and the sanction imposed were directly related; (2) "the offensive conduct is attributable to Sunbelt and its counsel"; (3) the sanctions and their amount "are based on legitimate purposes for sanctions"; (4) "Sunbelt's conduct constitutes flagrant bad faith"; (5) Sunbelt had callously disregarded its discovery responsibilities under the rules; and (6) the sanctions were not excessive. These unchallenged findings, entered after an evidentiary hearing, support the sanctions award.

## Conclusion

Having overruled Sunbelt's two issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  February 29, 2024