

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| GEORGE ALEJOS and YOLANDA ALEJOS, | § | No. 08-23-00321-CV |
| | § | Appeal from |
| Appellants, | | |
| | § | 57th Judicial District Court |
| v. | | |
| | § | of Bexar County, Texas |
| JOHN VANCE and DEPOLOS, INC., | | |
| | § | (TC# 2016-CI-07128) |
| Appellees. | | |

## MEMORANDUM OPINION

This appeal stems from a 1998 judgment against George Alejos. After being assigned the 1998 judgment and attempting to collect on it, Appellees John Vance and Depolos, Inc. (collectively, Vance) sued Appellants, George and Yolanda Alejos, for purportedly fraudulent transfers and civil conspiracy. After striking the Alejoses' pleadings and finding their responses to requests for admission deemed admitted, the trial court entered final judgment in Vance's favor and awarded him over $1,000,000. For the reasons below, we reverse.[1]

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

# I. BACKGROUND

On July 1, 1998, a Bexar County district judge entered final judgment in a separate suit against Mr. Alejos brought by Tony Gomez. The judgment ordered Mr. Alejos to pay Mr. Gomez $12,888 in actual damages, $100,000 in exemplary damages, and $36,620 in attorney's fees. As the Alejoses note on appeal, the record in this case reflects "some inconsistency" about whether and to what extent that judgment was paid.

In 2016, Vance sued the Alejoses, alleging fraudulent transfer under the Texas Uniform Fraudulent Transfer Act and civil conspiracy claims, and seeking punitive damages and attorney's fees.[2] Vance claimed that since the 1998 judgment, "several abstracts have been filed" and "several writs of execution have issued and been returned," but the Alejoses "conspired and schemed to defraud the Judgment Creditors" by transferring property in Mr. Alejos's name to Ms. Alejos and filing for a "sham" divorce.

The Alejoses responded with a general denial. Discovery ensued. As relevant to this appeal, Vance served the Alejoses with written discovery, including requests for admissions, on April 18, 2017. The response deadline of June 7 was extended to June 19. After the Alejoses served their responses, Vance filed a motion to compel discovery and for discovery sanctions. The motion represented that the Alejoses served their responses on June 20—not the due date of June 19—because the "responses were served by facsimile after 5:00 p.m. on June 19, 2017," and "[t]hus, by rule, Defendants' responses are deemed served on the next business day, June 20, 2017." Vance's motion attached the Alejoses' faxed responses, which are timestamped on June 19, 2017, at 17:29, or 5:29 p.m., and include a certificate of service dated June 19, 2017.

---

[2] While the petition does not explain Vance's claim to the 1998 judgment, the record includes an assignment of judgment tracing the ownership interest in the judgment to Vance.

After a hearing (a transcript of which does not appear in the record), the court granted Vance's motion and found, among other things, that the Alejoses' responses to the requests for admission "were late served and therefore waived and each and every one of the requests for admission is deemed admitted by operation of law." The order further stated that "any objection raised or asserted by Defendants that may have been valid is obscured by the large number of invalid, frivolous objections attempted by Defendants." The court also struck the Alejoses' answer, and it required the Alejoses to pay Vance $3,850 in attorney's fees.

As litigation continued, the Alejoses were variously represented by counsel and pro se, which had a deleterious effect on their defense. For example, just days before the hearing on Vance's motion to compel, the trial court granted the Alejoses' then-attorney's motion to withdraw. During a period in which the Alejoses were represented, they filed a first amended answer and a motion to strike the deemed admissions. The answer reasserted the Alejoses' general denial and raised the affirmative defenses of payment and limitations. The motion to strike the deemed admissions argued that the "[d]eemed admissions will prevent Defendants from litigating this lawsuit," which would "violate Defendants' due process rights, unless Plaintiffs can establish flagrant bad faith or callous disregard for the rules by Defendants." The motion further stated that the deemed admissions would be "case determinative, and constitute a 'merits-preclusive sanction.'" And it urged that Vance would not be unduly prejudice if the admissions were withdrawn because "the case will be resolved on the merits instead of by procedural default." The Alejoses reasserted these arguments in response to one of Vance's summary-judgment motions.

Vance moved to strike the Alejoses' amended pleading. Vance argued that the affirmative defenses "are contrary to the deemed admissions" which had "been the law of the case for almost five (5) years" and that Vance would "be unduly prejudiced" if the Alejoses asserted these

affirmative defenses. Vance also urged that he was entitled to summary judgment on these affirmative defenses.

After a hearing (at which the Alejoses proceeded pro se), the trial court granted Vance's motion to strike the amended answer. The order also stated that the Alejoses "are not allowed to replead" the affirmative defense of payment and release or limitations. And the court awarded Vance $8,000 in attorney's fees as sanctions.

The case was set for trial the week of October 5, 2023. On September 29, 2023, Vance filed a "Motion for Instructed/Directed Verdict and for Judgment Against Defendants George & Yolanda Alejos." The motion argued that Vance was entitled to judgment on the deemed admissions and lack of answer on file, "leav[ing] no facts to be determined by the trier of fact." The motion clarified that "[u]pon the admission of, or reliance upon, the Alejos' said judicial admissions, Plaintiffs will be entitled to a directed verdict against defendants George & Yolanda Alejos, jointly and severally, as a matter of law." Vance attached several documents to the motion, including the requests for admission and court order deeming them admitted, excerpts from hearings in probate court regarding the estate of Mr. Alejos's late sister, and the underlying judgment and various orders in that case.

On the parties' trial date, the Alejoses appeared for trial pro se. Mr. Alejos moved to continue the trial, as he had just hired an attorney, but the trial court denied his motion. Vance's counsel argued his motion, urging that the Alejoses' answers were struck such that they were "in default status and ha[d] not done anything to cure that" and the deemed admissions "leave no issue of disputed fact for the Court or a jury to decide on any of the elements" of his claims. Accordingly, he argued, Vance was "entitled to judgment based on those judicial admissions, and it would behoove the Court to allow [Vance] to proceed in that vein . . . that is, through a directed verdict

4

instead of having to take the time with a jury, because the jury wouldn't decide anything." The trial court granted the motion, except for Vance's exemplary damages request.

The final judgment found that the Alejoses "jointly and severally, violated the Texas Uniform Fraudulent Transfer Act . . . and committed fraud against Plaintiffs, and that Plaintiffs are entitled to, *inter alia*, sheriff's sale of all real property interests belonging to, or that are in the name of, George Alejos and/or Yolanda Alejos, to satisfy this judgment." It then awarded Vance, among other things, $1,000,000 in unspecified damages with 10% annual prejudgment interest and $400,000 in attorney's fees, plus an additional $150,000 in conditional attorney's fees for an appeal to the court of appeals and $135,000 for a petition for review or appeal to the Texas Supreme Court with 10% annual interest backdated to April 2017.

After the Alejoses' new attorney appeared on their behalf, the Alejoses appealed.

## II. DISCUSSION

The Alejoses raise five issues on appeal: (1) the judgment is predicated on two orders that improperly struck their pleadings; (2) even assuming their responses to the requests for admission were untimely, the court erred by deeming them admitted; (3) insufficient evidence supports the judgment; (4) Vance's TUFTA claim was extinguished by the statute of repose; and (5) Vance cannot recover on a dormant judgment. As a preliminary matter, we address the nature of Vance's relevant dispositive motion to understand what the resulting order is, as that determines our standard of review on appeal.

### A. We construe Vance's pretrial motion for directed verdict as a summary-judgment motion.

Vance moved for "instructed/directed verdict" before trial. The motion claims that "[b]ecause there is no genuine issue of material fact as to a claim or defense in the lawsuit, and

5

because Defendants' judicial admissions support Plaintiffs' claims and causes of action and further because Defendants have no defense, Plaintiffs are entitled to judgment as a matter of law," citing to Texas Rule of Civil Procedure 166a(c) (regarding motions for summary judgment) and caselaw regarding summary-judgment standards, in addition to Rule 268 (regarding motions for instructed verdict). The motion also expressly seeks reconsideration of Vance's motion for summary judgment in the alternative. Following a hearing on the motion, the trial court granted it.

The final judgment refers to the verdict as "directed and/or instructed." But a directed verdict is proper after a "party has had a full opportunity to present its case and has rested." *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003). Here, a review of the reporter's record makes clear that the trial court heard and granted the motion before trial began. For example, the court began proceedings by stating:

> Prior to beginning a trial, I am going to take up pretrial matters only. It's my understanding, and I have reviewed, there is a motion for a directed verdict, and that is the only matter that I will be taking up. Depending on my ruling, you may or may not be sent for a jury assignment.

In announcing its ruling, the court later stated:

> You are set for trial. You were on call. You have been assigned to this court. We are taking up a directed verdict motion to determine whether any issues of material and genuine facts for a fact-finder and a trier of fact to consider. There is a[n] underlying judgment in this case. Given the pleadings on file, I am going to grant a directed verdict . . . .

Reviewing the motion and the reporter's record, we conclude Vance sought, and the trial court granted, summary judgment and we construe the motion and judgment accordingly.[3] *See*

---

[3] Default judgment may also be rendered as a discovery sanction when the trial court strikes a defendant's answers. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 184 (Tex. 2012). But both the motion and final judgment here did not rely solely on the pleadings and the fact that the Alejoses' answers were struck; instead, they relied upon the deemed admissions. Vance's motion is more accurately characterized as a motion for summary judgment attaching deemed admissions as evidence and bolstered by the death-penalty sanctions striking the Alejoses'

*Willie v. Donovan And Watkins, Inc.*, No. 01-00-01039-CV, 2002 WL 537682, at *2 (Tex. App.—Houston [1st Dist.] Apr. 11, 2002, no pet.) (not designated for publication) (construing motion for directed verdict granted before start of trial as a motion for summary judgment). We review summary judgments de novo. *McGehee v. Endeavor Acquisitions, LLC*, 603 S.W.3d 515, 521 (Tex. App.—El Paso 2020, no pet.). In a traditional summary-judgment motion, the moving party bears the burden to establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Id.*

Having determined Vance moved for, and the trial court granted, summary judgment, we turn to the Alejoses' first issue on appeal.

**B.   We cannot conclude the trial court abused its discretion by striking the Alejoses' answers.**

In their first issue, the Alejoses assert the trial court abused its discretion by striking their answers, known as a "death-penalty sanction," in August 2017 and September 2023 because: (1) neither order passes the requisite test for imposing such a penalty, and (2) both orders violated the Alejoses' due-process rights. We review a trial court's ruling on a motion for sanctions for abuse of discretion. *Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 573 (Tex. 2018) (per curiam).

Though a trial court has "broad authority to impose appropriate sanctions on recalcitrant litigants," its authority is not without limits. *Id.* at 572. Any sanction imposed by the trial court must be "just." *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 184 (Tex. 2012). That is, there must be a direct relationship between the misconduct and the sanction, and the sanction imposed cannot be excessive. *Id.* (citing *TransAmerican Nat. Gas Corp. v. Powell*, 811

---

pleadings. *Cf. In re Rozelle*, 229 S.W.3d 757, 763 (Tex. App.—San Antonio 2007, orig. proceeding) (moving for summary judgment after trial court denied party's request to withdraw deemed admissions).

S.W.2d 913, 917 (Tex. 1991)). Thus, death-penalty sanctions—in which the sanctioned party essentially loses the case because of the sanction—are "generally reserved for the most egregious cases in which the offending party's conduct justifies a presumption that its claims lack merit." *Altesse Healthcare*, 540 S.W.3d at 572. "Sanctions so severe that they prevent a decision on the merits are not justified except in the most severe cases of flagrant bad faith." *Id.* at 575. And except in "rare" cases involving "extreme bad faith," the trial court must "consider the availability of lesser sanctions before imposing death penalty sanctions." *Id.* at 576 (quoting *Cire v. Cummings*, 134 S.W.3d 835, 840 (Tex. 2004)). However, as the appellants in this case, it is the Alejoses' burden to provide this court with a record that supports their allegations of error. *Appleton v. Appleton*, 76 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990)).

The Alejoses have not carried their burden on appeal to demonstrate the trial court abused its discretion. As to the August 2017 order, we cannot conclude the trial court abused its discretion in striking the Alejoses' pleadings because the record is insufficient to support such a claim. The Alejoses have not presented a record from the hearing at which the court struck their original answer in the first sanctions order. Without a reporter's record of that hearing, we cannot determine whether the trial court committed error or whether any error was preserved. *Appleton*, 76 S.W.3d at 87.

As to the September 2023 order, the Alejoses have not preserved this issue for appeal. The complaint that the trial court erroneously struck a pleading as a death-penalty sanction must be first raised in the trial court to preserve the issue for appellate review. Tex. R. App. P. 33.1(a); *Jurgens v. Martin*, 631 S.W.3d 385, 408 (Tex. App.—Eastland 2021, no pet.); *FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 137 (Tex. App.—Houston [14th Dist.] 2016, pet.

8

denied) (citing *In re B.L.D.*, 113 S.W.3d 340, 350–52 (Tex. 2003)); *see also Guzzetta v. Brimhall LQ, LLC*, 678 S.W.3d 251, 256 (Tex. App.—San Antonio 2023, no pet.) (discussing fundamental-error doctrine's two instances—not present here—in which an appeals court can review issues not preserved in trial court); *Werley v. Cannon*, 344 S.W.3d 527, 535 (Tex. App.—El Paso 2011, no pet.) (concluding complaint that trial court failed to consider less stringent sanctions was not preserved on appeal). The Alejoses have provided a record of the hearing at which the trial court struck their amended answer; however, nothing in the record demonstrates that the Alejoses challenged the trial court's decision to strike their amended answer at the hearing or after the court entered its ruling. Because the Alejoses did not raise this issue before the trial court, we cannot review it on appeal. The Alejoses' first issue is overruled.

### C. The trial court abused its discretion by denying the Alejoses' request to withdraw its deemed admissions.

In their second issue, the Alejoses argue the trial court abused its discretion by deeming the requested admissions admitted. After the Alejoses apparently faxed their responses 29 minutes late, the trial court found the responses "were late served" and "deemed admitted by operation of law." Though the Alejoses sought to withdraw or strike the deemed admissions, the trial court did not expressly rule on their motion but instead relied on the deemed admissions in rendering judgment for Vance.[4]

---

[4] Vance complains that the Alejoses waived this issue—and indeed their entire appeal—by not filing a motion for new trial. But moving for a new trial is not a prerequisite to a complaint on appeal, except as provided in Texas Rule of Civil Procedure Rule 324(b). Because this issue does not fall within Rule 324(b)'s exceptions, the Alejoses were not required to raise the issue in a motion for new trial. The Alejoses preserved the issue for appeal by filing a request to withdraw their deemed admissions. *Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 669 (Tex. App.—San Antonio 2014, pet. denied) (citing Tex. R. App. P. 33.1(a)(1)(A)). They raised this argument again at the September 2023 hearing when the trial court struck their amended answer and as an objection to the deemed admissions as part of Vance's summary-judgment evidence. Thus, the Alejoses preserved error on the deemed admissions issue (even though they did not obtain an express denial of their motion on the record). *Id.* at 669–70.

The Rules of Civil Procedure permit a party to serve "written requests that the other party admit the truth of any matter within the scope of discovery." Tex. R. Civ. P. 198.1. The discovery rules "do not, strictly speaking, prohibit merits-preclusive requests for admissions." *Medina v. Zuniga*, 593 S.W.3d 238, 245 (Tex. 2019) (citing Tex. R. Civ. P. 198.1). But "requests for admissions are no method for trying the merits." *Id.* at 246; *see also Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011) (per curiam) ("[R]equests for admission should be used as 'a tool, not a trapdoor.'" (quoting *U.S. Fid. And Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008))). Instead, requests for admissions are intended "to simplify trials" regarding "uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents" and may also be used to elicit "statements of opinion or of fact or of the application of law to fact." *Medina*, 593 S.W.3d at 244–45 (cleaned up).

Once requests for admissions have been served, the responding party has 30 days to respond, though the response time may be modified by agreement or by the court for good cause. Tex. R. Civ. P. 191.1. If a response is not timely served, "the request is considered admitted without the necessity of a court order." *Id.* R. 198.2(a), (c). However, a party may move to withdraw a deemed admission. *Id.* R. 198.3.

A trial court may grant the request to withdraw a deemed admission if: (1) the moving party shows good cause for the withdrawal; and (2) the court finds the non-moving party will not be unduly prejudiced. *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005). We review a trial court's decision on withdrawing deemed admissions for abuse of discretion. *Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 665 (Tex. App.—San Antonio 2014, pet. denied) (citing *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996) (per curiam)).

### D. Good cause

A party seeking withdrawal of deemed admissions can show good cause exists if the failure to answer was accidental rather than intentional or the result of conscious indifference. *Id.* (citing *Stelly*, 927 S.W.2d at 622). Good cause also exists when the deemed admissions act as a merits-preclusive sanction, unless the trial court finds the party seeking withdrawal acted in bad faith or with callous disregard. *Id.* (citing *Marino*, 355 S.W.3d at 634); *accord Gonzalez v. Gonzalez*, No. 04-20-00226-CV, 2021 WL 6127931, at *7 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) (mem. op.) (citing *Wheeler*, 157 S.W.3d at 443). "[A]bsent flagrant bad faith or callous disregard for the rules, due process bars merits-preclusive sanctions." *Wheeler*, 157 S.W.3d at 443. "Bad faith is not simply bad judgment or negligence, but the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose." *Gonzalez*, 441 S.W.3d at 666 (quoting *Armstrong v. Collin Cnty. Bail Bond Bd.*, 233 S.W.3d 57, 63 (Tex. App.—Dallas 2007, no pet.)); *accord McEndree v. Volke*, 634 S.W.3d 413, 423 (Tex. App.—Eastland 2021, no pet.). Bad faith or callous disregard may also exist when "a party is mindful of impending deadlines and nonetheless either consciously or flagrantly fails to comply with the applicable rules." *McEndree*, 634 S.W.3d at 423 (citing *Ralls v. Funk*, 592 S.W.3d 178, 183 (Tex. App.—Tyler 2019, pet. denied)). When the deemed admissions are merits preclusive, the burden to prove bad faith or callous disregard rests on the party opposing withdrawal. *Gonzalez*, 441 S.W.3d at 666 (citing *Marino*, 355 S.W.3d at 634); *accord Tex. SMAC, LLC v. EMJ Corp.*, No. 04-18-00391-CV, 2019 WL 1923048, at *2 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.). Here, many of the 58 deemed admissions are plainly merits preclusive, as they seek to gain concessions from the Alejoses on liability and damages. A sample includes:

27. The judgment debtor GEORGE ALEJOS and defendant YOLANDA ALEJOS conspired and schemed to defraud the Judgment Creditors and/or their predecessors in interest.

32. Defendants George and Yolanda Alejos are jointly and severally liable to Plaintiffs.

33. Defendants George and Yolanda Alejos engaged in a scheme whereby judgment debtor GEORGE ALEJOS transfers all, or virtually all, of his property rights in the property that he and his spouse acquired during marriage.

37. The scheme of defendants to defraud Plaintiffs of The Judgment Lien or The July 1, 1998, Judgment included their seeking to obtain a, or filing for, divorce. In this regard, the defendants filed for divorce in Cause Number 2016CI-03430. The divorce is a sham. It is yet but another overt act in furtherance of the Defendants' conspiracy, fraudulent transfers and/or scheme to avoid the Judgment.

47. Plaintiffs are entitled to recover from defendants, jointly and severally, reasonable and necessary attorney's fees and court costs through a trial on the merits or judgment in the amount of at least $400,000.00.

48. Plaintiff are entitled to recover additional reasonable attorneys' fees required in any proceedings following a trail [sic] on the merits, including fees in the amount of at least $150,000.00 in the event of an appeal of this case to the court of appeals and a further, additional reasonable attorney's fee in the amount of at least $l35,000.00 in the event of a writ of error to the Supreme Court of the State of Texas.

50. You have no defense to Plaintiffs' causes of action plead against you in Plaintiff's Original Petition.

53. As a result of Defendants' fraudulent transfer(s), the Plaintiffs have been damages in the amount of $1,000,000.00.

54. Plaintiffs are entitled to judgment against Defendants, jointly and severally.

55. Plaintiffs are entitled to actual damages from Defendants jointly and severally.

Vance's motion also demonstrates the deemed admissions were conclusive for establishing both liability and damages. For example, Vance's motion begins: "In a nutshell, Plaintiffs are entitled to judgment on Defendants' judicial admissions and because Defendants have no answer. Defendants' judicial admissions provide the essential facts necessary to prove-up Plaintiff's causes

of action against Defendants and leave no facts to be determined by the trier of fact." And at the hearing on the motion, Vance's counsel asserted the proposed final judgment was "in accord with the judicial admissions that have been made with respect to the amount of damages and the relief that the Plaintiffs are seeking." Because the requests for admissions had a merits-preclusive effect, the resulting due-process concerns establish good cause for their withdrawal unless Vance established the Alejoses acted in bad faith or with callous disregard. *Gonzalez*, 441 S.W.3d at 666 (citing *Marino*, 355 S.W.3d at 634); *accord $8000.00 in United States Currency v. State*, No. 04-22-00672-CV, 2023 WL 5072603, at *5 (Tex. App.—San Antonio Aug. 9, 2023, no pet.) (mem. op.).

Vance made no such showing. At the trial court, Vance alleged that the Alejoses "failed to properly respond to [his] written discovery," "failed to comply with the requirements of the [Texas Rules of Civil Procedure] concerning discovery," "failed to comply with the instructions provided with each of [his] discovery requests," and "submitted late, incomplete responses with frivolous objections, provided no information, answered virtually nothing and produced nothing." The Alejoses' responses to the requests for admissions belie Vance's complaints. Of the 58 requests for admission, the Alejoses either admit or deny all but four. For the remaining four requests,[5] the

---

[5] These requests are:

  8. The July 1, 1998, Judgment was rendered against defendant George Alejos, in the sum of $149,508.00, plus pre-judgment interest from May 7, 1995 through the date of the judgment, in the sum of $41,154.71, together with interest on the sum there of or the total judgment as of July 1, 1998, ($171,662.71), at the rate of TEN Percent per annum from the date of judgment (July 1, 1998) until paid.

  13. Several Writs of execution have issued and been returned in connection with The July 1, 1998 Judgment.

  17. Judgment Debtor George Alejos, a licensed real estate broker, was involved in numerous real estate transactions over the years to which the Judgment Lien attached.

Alejoses responded "[c]annot corroborate, therefore must deny." Vance characterized the Alejoses' response as "evasive" and "in complete dereliction of the spirit and mandate" of the Rules of Civil Procedure. But Rule 198.2(b) specifically permits a responding party to "qualify an answer, or deny a request in part, only when good faith requires." Likewise, Vance lodged various complaints about the Alejoses' objections and responses to other discovery requests but failed to provide any argument or authority that their conduct rose to the level of bad faith or callous disregard. *Cf. Cire*, 134 S.W. at 843 (finding trial court did not abuse its discretion by striking pleadings after defendant deliberately destroyed only objective evidence that would have supported or disproved claims); *McEndree*, 634 S.W.3d at 428 (concluding party opposing withdrawal of deemed admissions failed to establish movant acted in flagrant bad faith or callous disregard for the applicable rules when he failed to respond to merits-preclusive requests for admissions).

On appeal, Vance argues that "[b]y their late served responses, the Alejoses violated the rule of law for discovery and demonstrated callous disregard for the discovery rules and their obligation to provide information as required by law." We cannot agree that discovery responses received by fax 29 minutes after 5 p.m. on the due date constitutes bad faith or callous disregard, even if the responses were deemed served the next day under Rule 21a(b)(2). *Cf. Tex. SMAC*, 2019 WL 1923048, at *3 (concluding trial court did not abuse its discretion in refusing to allow withdrawal of deemed admissions sought by party that, among other things, failed to respond to discovery requests until over seven months after it was served with discovery requests despite numerous notices of overdue responses). Although "evidence showing that 'a party is mindful of

18. Judgment Debtor George never advised any of the parties in the real estate transactions in which he has been involved since July 1, 1998, of the existence of The Judgment Lien or The July 1, 1998 Judgment.

14

pending deadlines and nonetheless either consciously or flagrantly fails to comply with the rules'" may constitute bad faith or callous disregard, the record contains no indication that the Alejoses acted in such a manner. *Estate of Campos*, No. 04-19-00350-CV, 2020 WL 1866460, at *4 (Tex. App.—San Antonio Apr. 15, 2020, no pet.) (quoting *Ramirez v. Noble Energy, Inc.*, 521 S.W.3d 851, 860 (Tex. App.—Houston [1st Dist.] 2017, no pet.)).

When Vance sought to use the requests for admission to preclude the presentation of the merits in this case and opposed the Alejoses' requested withdrawal of the deemed admissions, he assumed the burden to show the Alejoses acted in bad faith or with callous disregard of the rules, a burden he failed to meet. *See Barker v. Mason Bancshares, Inc.*, No. 04-20-00301-CV, 2021 WL 2942529, at *4 (Tex. App.—San Antonio July 14, 2021, no pet.) (mem. op.). Because the deemed admissions are merits-preclusive and Vance failed to meet his burden to show the bad faith or callous disregard on the Alejoses' part, the Alejoses established good cause for the withdrawal of the deemed admissions.

### E. Undue prejudice

Next, we consider whether withdrawal of the deemed admissions would have caused Vance undue prejudice. *Gonzalez*, 441 S.W.3d at 667 (citing *Wheeler*, 157 S.W.3d at 444). "Undue prejudice depends on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Wheeler*, 157 S.W.3d at 443. But if the party requesting the admissions knew or should have known the admissions were improper, he cannot rely on the admissions and later claim prejudice based on the decision not to develop evidence in other ways, like taking depositions. *Gonzalez*, 441 S.W.3d at 668–69. Though that party may be prejudiced by withdrawal of the admissions, that prejudice is not "undue" if the admissions were "used to establish controverted issues that constitute the fundamental legal issues

15

in a case." *Id.* (collecting cases). Finally, as part of the undue-prejudice inquiry, courts also consider whether the "presentation of the merits of the action will be subserved by permitting the party to amend or withdraw the admission." Tex. R. Civ. P. 198.3; *Wheeler*, 157 S.W.3d at 443 n.2.

Here, Vance sought admissions that went directly to the elements of his fraudulent transfer and conspiracy claims, i.e., "controverted issues that constitute the fundamental legal issues in a case." *Gonzalez*, 441 S.W.3d at 668. The admissions also asked the Alejoses to concede their defenses and even sought to establish damages and attorney's fees. "Requests for admission were never intended for this purpose." *Marino*, 355 S.W.3d at 632 (characterizing requests asking defendant to "essentially . . . admit the validity of [plaintiff's] claims and concede her defenses— matters [plaintiff] knew to be in dispute"). Because the requests for admission that went to the ultimate issue of liability and damages were improper, Vance was not justified in relying on them and declining to develop evidence to support his claim through other means. *See id.* at 669. Thus, we conclude Vance would not have been unduly prejudiced by withdrawal of the deemed admissions. And there is no question that the presentation of the case's merits would have been served by the trial court's withdrawal of the deemed admissions because the case was effectively decided on that basis. *See Gonzalez*, 441 S.W.3d at 669 (citing *In re Kellogg-Brown & Root, Inc.*, 45 S.W.3d 772, 777 (Tex. App.—Tyler 2001, no pet.)).

Under the facts presented, the trial court should have allowed the deemed admissions to be withdrawn rather than adjudicate the case's merits on them. Accordingly, the Alejoses' second issue is sustained.

## III. CONCLUSION

16

Because the trial court's judgment in Vance's favor relied upon the deemed admissions for both liability and damages, Vance cannot establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *McGehee*, 603 S.W.3d at 521. Accordingly, we sustain the Alejoses' third issue challenging the sufficiency of the evidence supporting the judgment.[6]

We reverse the trial court's final judgment and remand for proceedings consistent with this opinion.


LISA J. SOTO, Justice


September 4, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

---

[6] Because the Alejoses second and third issues are dispositive, we do not reach the Alejoses' additional issues on appeal. Tex. R. App. P. 47.1.